**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PATRICIA CAVALLARO-KEARINS, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

DELTA DENTAL OF NEW YORK, INC.,

*Defendant.*

Case No. 7:24-cv-06946-CS

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 2

III. PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE HER CLAIMS UNDER RULE 12(B)(1). ..... 3

A. Legal Standard For Dismissal Under Rule 12(b)(1) For Lack of Standing ..... 3

B. Plaintiff Fails To Plausibly Allege Loss of Benefit of the Bargain. ..... 4

C. Plaintiff Fails To Plausibly Allege Loss of Value of Personal Information. ..... 5

D. Plaintiff Does Not Plausibly Allege Continued and Ongoing Substantial Risk to Her Private Information to Satisfy Article III Standing Requirements. ..... 7

E. Plaintiff's Proclaimed "Injuries" of Invasion of Privacy and Disclosure of Her Private Information Are Insufficient To Confer Standing. ..... 8

F. The Alleged Violations of Plaintiff's Statutory Rights Do Not, By Themselves, Suffice for Article III Standing. ..... 9

IV. PLAINTIFF FAILS TO PLEAD ANY PLAUSIBLE CLAIM FOR RELIEF UNDER RULE 12(B)(6) ..... 10

A. Legal Standard For Dismissal Under Rule 12(b)(6). ..... 10

B. Plaintiff Fails to State Claims for Breach of Contract and Breach of Implied Contract (Counts I & IV) ..... 11

1. Plaintiff fails to plead a breach of contract claim. ..... 11

2. Plaintiff's breach of implied contract claims similarly fails. ..... 14

C. Plaintiff Fails to State a Claim For Breach of Fiduciary Duty and Breach of Confidence (Counts II & V) ..... 15

1. Plaintiff fails to plead a breach of fiduciary duty claim ..... 15

2. Plaintiff's breach of confidence claim similarly fails. ..... 17

D. Plaintiff Fails To State a Claim for Unjust Enrichment ..... 18

E. Plaintiffs Fail To State a Claim for Bailment (Count VI) ..... 19

F. Plaintiff Fails to State a Claim for Violation of New York GBL § 349 (Count VII) ..... 20

G. Plaintiff Fails to State a Claim For Violation of The Wiretap Act, 18 USC 2511(1) (Count VIII) ..... 21

V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addi v. Int'l Bus. Machines, Inc.*
No. 23 CIV. 5203 (NSR), 2024 WL 2802863 (S.D.N.Y. May 31, 2024) ....18

*Aponte v. Ne. Radiology, P.C.*
No. 21, 2022 WL 1556043 (S.D.N.Y. May 16, 2022)....3, 5, 7

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....10

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)....10

*Bohnak v. Marsh & McLennan Cos.*
79 F.4th 276 (2d Cir. 2023) ....8, 9

*Cantinieri v. Verisk Analytics, Inc.*
No. 2:21-CV-6911 (NJC) (JMW), 2024 WL 5202579 (E.D.N.Y. Dec. 23, 2024)
....6, 7, 8, 9

*Caro v. Weintraub*
618 F.3d 94 (2d. Cir. 2010)....22

*Carovillano v. Sirius XM Radio Inc.*
No. 23 CIV. 4723 (PAE), 2024 WL 450040 (S.D.N.Y. Feb. 6, 2024)....18

*Chambliss v. Carefirst, Inc.*
189 F. Supp. 3d 564 (D. Md. 2016) ....5

*Cherny v. Emigrant Bank*
604 F. Supp. 2d 605 (S.D.N.Y. 2009)....20

*City of New York v. Smokes-Spirits.Com, Inc.*
12 N.Y.3d 616 (N.Y. 2009) ....20

*Cohen v. Casper Sleep Inc.*
No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)....22, 23

*Cooper v. Bonobos, Inc.*
No. 21-CV-854 (JMF), 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ....6, 7

*Cooper v. Mount Sinai Health Sys., Inc.*
No. 23 CIV. 9485 (PAE), 2024 WL 3586357 (S.D.N.Y. July 30, 2024) ....23

*Cortlandt Street Recovery Corp. v. Hellas Telecomm.*
790 F.3d 411 (2d Cir. 2015)....................................................................................4

*In re DoubleClick Inc. Priv. Litig.*
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................................................................21

*Fero v. Excellus Health Plan, Inc.*
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ....................................................................6

*Fiala v. Metro. Life Ins. Co.*
6 A.D.3d 320 (2004) ..............................................................................................16

*Fraga v. UKG, Inc.*
No. 2-cv-20105, 2022 WL 19486310 (S.D. Fla. May 10, 2022)...............................6

*Gasery v. Kalakuta Sunrise*
LLC, 422 F. Supp. 3d 807 (S.D.N.Y. 2019) .........................................................16

*Gay v. Garnet Health*
23-cv-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)................................19, 23

*In re GEICO Customer Data Breach Litigation*
No. 21-cv-2210, 2023 WL 4778646 (E.D.N.Y. July 21, 2023)...............................6, 7

*Georgia Malone & Co., Inc. v. Reider*
19 N.Y.3d 511 (2012) ............................................................................................18

*Greenstein v. Noblr Reciprocal Exch.*
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ....................................................................6

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*
747 F.3d 44 (2d Cir. 2014)......................................................................................4

*Kane v. Univ. of Rochester*
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)......................15, 17, 23

*Kwok Sze v. Pui-Ling Pang*
No. 15-CV-447 CS, 2015 WL 6867134 (S.D.N.Y. Nov. 9, 2015)...........................22

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992)..................................................................................................4

*Mariah Re Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*
607 F. App'x 123 (2d Cir. 2015)............................................................................13

*Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*
52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014) ..............................................................13

*Marks v. New York Univ.*
61 F. Supp. 2d 81 (S.D.N.Y. 1999) ....................11

*McMorris v. Carlos Lopez & Assocs., LLC*
995 F.3d 295 (2d Cir. 2021)....................7, 8, 9

*Neurological Surgery, P.C. v. MLMIC Ins. Co.*
208 A.D.3d 1238 (2022) ....................16

*NFA Grp. v. Lotus Rsch., Inc.*
180 A.D.3d 1060 (2020) ....................12

*Nike, Inc. v. Already, LLC*
663 F.3d 89 (2d Cir. 2011)....................3

*Okash v. Essentia Health*
No. CV 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024)....................23

*Piuggi v. Good for You Prods. LLC*
No. 23 CIV. 3665 (VM), 2024 WL 3274638 (S.D.N.Y. July 2, 2024) ....................15

*In re Practicefirst Data Breach Litig.*
No. 1:21-CV-00790(JLS/MJR), 2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ....................7

*Prime Contractors, Inc. v. APS Contractors Inc.*
No. 22-CV-1581 (WFK), 2024 WL 4511601 (E.D.N.Y. Oct. 17, 2024) ....................13

*Rudolph v. Hudson's Bay Co.*
No. 18-CV-8472 (PKC), 2019 WL 2023713 (S.D.N.Y. May 7, 2019)....................5, 7

*Santana v. Take-Two Interactive Software, Inc.*
717 F. App'x 12 (2d Cir. 2017)....................5

*Shafran v. Harley-Davidson, Inc.*
2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ....................20

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016)....................4, 10

*Stadt v. Fox News Network LLC*
719 F. Supp. 2d 312 (S.D.N.Y. 2010)....................16

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021)....................4, 9

*In re Unite Here Data Sec. Incident Litig.*
740 F. Supp. 3d 364 (S.D.N.Y. 2024)....................17

*United States v. Jiau*
734 F.3d 147 (2d Cir. 2013)....................23

*Vigil v. Take-Two Interactive Software, Inc.*
235 F. Supp. 3d 499, 518 (S.D.N.Y. Jan. 30, 2017)....................5

*Wallace v. Health Quest Sys., Inc.*
No. 20, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021)....................19

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*
530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009)....................15

*Xu v. Reuters News & Media, Inc.*
No. 24-civ-2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)....................4, 8, 9, 10

*Yanes v. Ocwen Loan Servicing, LLC*
No. 13-CV-2343 JS ARL, 2015 WL 631962 (E.D.N.Y. Feb. 12, 2015)....................11

**Statutes**

Electronic Communications Privacy Act, 18 U.S.C. § 2510....................9, 10

HIPAA....................3, 12, 13, 20, 22, 23

New York's Deceptive Trade Practices Act
(New York Gen. Bus. Law § 349)....................3, 9, 20, 23

Wiretap Act 18 U.S.C. 2511....................21, 22, 23, 24

Wiretap Act 18 U.S.C. § 2510....................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)....................1, 2, 3, 4, 10, 24

Fed. R. Civ. P. 12(b)(6)....................1, 2, 10, 11, 24

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Delta Dental of New York, Inc. ("DDNY" or "Defendant"), by and through its undersigned counsel, respectfully submits this Motion to Dismiss the Second Amended Complaint of Plaintiff Patricia Cavallaro-Kearins ("Plaintiff").

## I. INTRODUCTION

Despite being nearly 250 paragraphs long, and even though Plaintiff has already amended her complaint *twice*, Plaintiff's Second Amended Complaint remains completely devoid of any allegations of concrete, particularized, and actual, or imminent injuries stemming from Defendant's allegedly illicit conduct. Indeed, Plaintiff identifies her proclaimed "injuries" in only two paragraphs (out of 248)—Paragraphs 20 and 144—both of which recite the same conclusory, unsupported, and perfunctory laundry list of alleged injuries. These "injuries" include: "(i) invasion of privacy; (ii) violation of confidentiality of [Plaintiff's] Private Information; (iii) loss of benefit of the bargain; (iv) loss of value of the Private Information; (v) violation of [Plaintiff's] legal rights and statutory damages; and (vi) the continued and ongoing risk to [Plaintiff's] Private Information." *See* Second Amended Complaint ("SAC") (Dkt. 19) ¶¶ 20, 144. Beyond the above, Plaintiff offers no additional facts or information to demonstrate she has suffered any harm or injury from Defendant's alleged misconduct. Plaintiff alleges no actual damages, no identity theft, no fraud, and no financial losses. As a result, Plaintiff has failed to plausibly allege any injury sufficient to confer standing to bring her claims under Article III, and for that reason, her Second Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Separate from the lack of Article III injury (which alone proves fatal), Plaintiff's Second Amended Complaint similarly fails to sufficiently and plausibly allege any of her eight claims for relief. As will be discussed below, major factual allegations are missing, including (1) exactly which documents and representations Plaintiff reviewed and relied upon when visiting

Defendant's website; (2) the time period Plaintiff visited Defendant's website; (3) what specific communications and data of Plaintiff was collected; (4) what *actual* harm Plaintiff suffered; and (5) how Plaintiff came to believe that her data was being collected and used for marketing purposes. As a result, the bulk of her allegations about the alleged unauthorized collection and transmittal of her data are simply conclusions without any factual support. Even more damaging is the fact that Plaintiff was notified of *and agreed to* the alleged data collection and sharing practices of which she now complains. In the Second Amended Complaint, Plaintiff references the website Privacy and Security Policy as an example of documents to which she agreed *and relied upon* while navigating and accessing Defendant's website. This policy explicitly notifies Plaintiff that her data may be collected by third-party web technologies and transmitted to Defendant's third-party web technology vendors for marketing and analytics purposes.

The Second Amended Complaint's dearth of factual support regarding Plaintiff's alleged "injuries" and claims, and the fact that Plaintiff relied upon a policy that notifies her of the very conduct of which she now complains, prove disastrous for her claims. For the reasons discussed below, Defendant respectfully requests this Court dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P 12(b)(1) for lack of standing and Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief.

## II. RELEVANT BACKGROUND

Plaintiff seeks to impose liability on Defendant for allegedly using Internet cookies to collect data from its website—while Plaintiff was visiting authenticated webpages—and transmitting this data to third parties for marketing purposes without Plaintiff's notice and consent. Specifically, Plaintiff alleges to have "logged into her Delta Dental portal on the Delta Dental Website[,]" "was authenticated as a plan member" and used the Delta Dental website (the "Website") to "look for dentists located near her by [sic] in putting location information and her

plan type." Dkt. 19 ("Second Amended Complaint" or "SAC") at ¶ 23. Defendant then allegedly "assisted Adobe, Google, Datadog, and Qualtrics" to intercept "Plaintiff's communications, including those that contained personally identifiable information, protected health information and related confidential information[,]" and this data was then used for marketing purposes. *Id.* ¶ 23. While Plaintiff alleges to have relied upon "Defendant's representations" about its data collection practices, including a HIPAA Notice of Privacy Practices and Website Privacy and Security Policy—she asserts that her data was collected and shared for marketing purposes without her knowledge or consent. *See e.g., id.* ¶¶ 165, 219.

Based on these allegations, Plaintiff asserts eight causes of action against Defendant on behalf of herself and a proposed nationwide class: (i) Breach of Contract; (ii) Breach of Fiduciary Duty; (iii) Unjust Enrichment; (iv) Breach of Implied Contract; (v) Breach of Confidence; (vi) Bailment; (vii) Violation of New York's Deceptive Trade Practices Act (New York Gen. Bus. Law § 349); and (viii) Violation of the Wiretap Act (18 U.S.C. § 2510, et seq). SAC ¶ 21.[1]

## III. PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE HER CLAIMS UNDER RULE 12(B)(1).

### A. Legal Standard For Dismissal Under Rule 12(b)(1) For Lack of Standing

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotation marks omitted). "A court lacks the power to hear a party's claims when the party does not having standing [to sue]." *Aponte v. Ne. Radiology, P.C.*, No. 21 CV 5883 (VB), 2022 WL 1556043 at *2 (S.D.N.Y. May 16, 2022) (citing *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44,

[1] Plaintiff agreed to dismiss four previously pled claims after DDNY filed a letter requesting a pre-motion conference to move to dismiss the Amended Complaint. *See* Dkt. 18.

48 (2d Cir. 2014)). Article III standing requires three elements: "(i) that [Plaintiff] suffered an injury in fact that is concrete, particularized and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). At the motion to dismiss stage, Plaintiff bears the burden of "alleging facts that affirmatively and plausibly suggest that [she] has standing to sue." *Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 417 (2d Cir. 2015) (citation and internal quotation marks omitted).

In this case, Plaintiff alleges a laundry list of "injuries" that she claims stem from the surreptitious collection and disclosure of her personal information via third-party web technologies on Defendant's website. These "injuries" include: loss of the benefit of the bargain; loss of the value of Plaintiff's personal information; ongoing risk to Plaintiff's personal information; invasion of privacy; disclosure of personal information; and violation of Plaintiff's statutory rights and related statutory damages. *See* SAC ¶¶ 20, 144. **None** of these alleged "injuries" are sufficient to establish the "irreducible constitutional minimum' of standing [to sue]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Xu v. Reuters News & Media, Inc.*, No. 24-civ-2466 (PAE), 2025 WL 488501, at *3-5 (S.D.N.Y. Feb. 13, 2025). Because Plaintiff fails to allege facts sufficient to establish standing under Article III, Plaintiff's claims must be dismissed under Rule 12(b)(1) in their entirety. *See Xu*, 2025 WL 488501, at *3-6 (dismissing Plaintiff's web tracking complaint for lack of Article III standing); *see also Cortlandt*, 790 F.3d at 416–17.

### B. Plaintiff Fails To Plausibly Allege Loss of Benefit of the Bargain.

Plaintiff claims that she suffered "injury" in the form of a "loss of [the] benefit of the bargain." SAC ¶¶ 20, 144. However, "courts have consistently rejected as too tenuous to support an injury-in-fact claim that a defendant's failure to comply with the law, or to prevent an

[unauthorized disclosure of data], diminished the 'benefit-of-the-bargain.'" *Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472 (PKC), 2019 WL 2023713 at *8 (S.D.N.Y. May 7, 2019) (citation omitted); *see also Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 518 (S.D.N.Y. Jan. 30, 2017) (collecting cases), *aff'd in part, vacated in part for unrelated reasons in Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. 2017). Where the plaintiff has not plausibly alleged "that the value of the goods or services they purchased was diminished as a result of the [unauthorized disclosure][,]" plaintiff's alleged "loss of benefit of the bargain" cannot, as a matter of law, confer Article III standing. *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) (citation and internal quotation marks omitted). Such is the case here.

Other than flatly concluding that she suffered a "loss of [the] benefit of the bargain" (SAC ¶¶ 20, 144), Plaintiff's Second Amended Complaint is entirely devoid of any allegation that the value of her dental insurance or her dental care was diminished or declined as a result of Defendant's allegedly illicit use of web technologies on its website. *See, e.g.*, SAC ¶¶ 135-145. Indeed, Plaintiff does not identify the value she paid for her dental insurance or dental service (i.e., the value of the "bargain"), nor does Plaintiff correspondingly allege that she did not receive the services for which she paid (*i.e.*, the "benefit"). As such, Plaintiff's alleged "injury" is far too speculative and conjectural to establish an injury-in-fact sufficient to confer standing. *See Aponte*, 2022 WL 1556043 at *4; *Rudolph*, 2019 WL 2023713 at *8.

**C. Plaintiff Fails To Plausibly Allege Loss of Value of Personal Information.**

Plaintiff claims she also suffered a "loss of value of [her] Private Information." SAC ¶¶ 20, 144. As with Plaintiff's "loss of benefit of the bargain" theory, courts "have consistently 'rejected allegations that the diminution in value of personal information can support standing,' […] particularly where the plaintiffs 'have not alleged that they attempted to sell their personal information or that, if they have, the [] breach forced them to accept a decreased price for that

information[.]'" *Cooper v. Bonobos, Inc.*, No. 21-CV-854 (JMF), 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022) (citations and internal quotation marks omitted); *See also Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) (collecting cases); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) ("[T]o successfully demonstrate injury in fact by diminution in value of PI, [p]laintiffs must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market.") (citation and internal quotation marks omitted); *Fraga v. UKG, Inc.*, No. 2-cv-20105, 2022 WL 19486310, at *11 (S.D. Fla. May 10, 2022) ("Plaintiffs *do not* allege that there exists a legitimate market for consumer PII. Nor, wisely, do they allege that they ever intended to sell their PII to criminals on the black market.") (citation omitted). Indeed, ***if*** a plaintiff "does not allege that there is a market for her PII, that she attempted to sell her PII, or that she was forced to accept a decreased price, or any other facts that could explain how the value of her data decreased as a result of its disclosure to unauthorized third parties," ***then*** the plaintiff "has not plausibly alleged that any diminution of her PII constitutes an injury in fact that could support her Article III standing". *Cantinieri v. Verisk Analytics, Inc.*, No. 2:21-CV-6911 (NJC) (JMW), 2024 WL 5202579 at *15 (E.D.N.Y. Dec. 23, 2024) (citation omitted); *see also In re GEICO Customer Data Breach Litigation*, No. 21-cv-2210, 2023 WL 4778646, at *9 n.11 (E.D.N.Y. July 21, 2023).

In this case, Plaintiff attempts to demonstrate there is a market for her personal information by quoting from a handful of articles and studies written over a decade ago about the "value of personal data" to companies in America. *See* SAC ¶¶ 122-34 (section entitled "Plaintiff's and Class Members' Privacy Information has economic value."). Plaintiff's citation to these articles and studies is inapposite because these over-generalized articles do *not* establish that there was a market for *Plaintiff's* personal information. *See id*. Rather, they simply acknowledge that personal

information has value—a fact which, by itself, does not establish a market. And even if these academic allegations could establish a market for personal information, Plaintiff does not allege anywhere in her SAC that she attempted to sell her online activity or personal information into such a market *or* that she was forced to accept a decreased price for such information. *See* SAC ¶¶ 135-145. Furthermore, Plaintiff fails to offer any facts explaining *how* the value of her personal information decreased as a result of her online activity with Defendant's third-party vendors. This loss-of-value theory should be rejected because Plaintiff does not plausibly allege loss of actual value *to her*. As in *Cooper*, *Cantinieri*, and *GEICO*, Plaintiff's allegation that she suffered a loss in value to her personal information is insufficient to confer Article III standing here. *See also Aponte*, 2022 WL 1556043 at *4; *Rudolph*, 2019 WL 2023713 at *8.

### D. Plaintiff Does Not Plausibly Allege Continued and Ongoing Substantial Risk to Her Private Information to Satisfy Article III Standing Requirements.

In an effort to bolster her claims for injunctive relief and damages, Plaintiff contends she has experienced, and will experience, "injury" in the form of a "continued and ongoing risk to [her] Private Information" stemming from Defendant's use of third-party web technologies and disclosure of her information thereto. SAC ¶¶ 20, 144. In *McMorris v. Carlos Lopez & Assocs., LLC*, the Second Circuit enunciated three factors to consider in determining whether the risk of harm from the disclosure of her personal information is sufficiently "concrete, particularized, and imminent" to confer standing. 995 F.3d 295, 299-300 (2d Cir. 2021); *see also In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790(JLS/MJR), 2022 WL 354544, at *4 (W.D.N.Y. Feb. 2, 2022). These include: (i) whether the plaintiff's data was exposed as part of a targeted attempt to obtain the data; (ii) whether any portion of the data has already been misused, even if no fraud has resulted, and (iii) whether the type of data that has been exposed is sensitive such that there is a

high risk of identity theft or fraud. *McMorris*, 995 F.3d at 303. Here, Plaintiff has not alleged—***and cannot not allege***—any set of facts to satisfy all of the *McMorris* factors.

Plaintiff does not allege that Defendant's web technologies collected and transferred sensitive or personally identifying information *that could be used* to steal Plaintiff's identity or commit fraud. Rather, Plaintiff alleges the categories of "Private Information" collected by Defendant's web technologies include status as a plan member, "communications" with Defendant on its website, need for dental services, type of dentist, insurance plan, device IP address, and Google Client ID. *See, e.g.*, SAC ¶¶ 34, 64, 106-15 (discussion of Google Client ID); *id*. ¶¶ 107-15. Not surprisingly, Plaintiff does not allege (nor could she) that any of the above "Private Information" can be used to commit identity theft or fraud. What is more, Plaintiff does not allege that her personal information has been misused by any of the third-party web technology vendors in such a way so as to result in *actual* harm to her. *See* SAC ¶¶ 135-45. Indeed, Plaintiff does not allege that Plaintiff received any targeted advertising or was otherwise affected, much less concretely harmed by any such advertising. *See Xu*, 2025 WL 488501, at *3-4 (finding no Article III standing to bring web tracking claims against defendant). As such, the risk of harm identified by Plaintiff here is merely speculative and, without more, does not rise to the level of concrete, particularized, or imminent harm necessary for Article III standing.

### E. Plaintiff's Proclaimed "Injuries" of Invasion of Privacy and Disclosure of Her Private Information Are Insufficient To Confer Standing.

Plaintiff alleges she also suffered the "injuries" of "invasion of privacy" and "disclosure of [her] Private Information and identities[.]" SAC ¶¶ 20, 144. But, "the mere disclosure of the plaintiff's PII to an unauthorized actor [does] not, standing alone, establish the injury in fact required for Article III standing to bring claims targeting the defendants' disclosure of [plaintiff's] PII." *Cantinieri*, 2024 WL 5202579 at *11 (discussing the Second Circuit's holding in *Bohnak v.*

*Marsh & McLennan Cos.*, 79 F.4th 276, 287-88 (2d Cir. 2023). While the "disclosure of [Plaintiff's] Private Information" may satisfy the "concreteness" and "particularized" requirements for an injury-in-fact, Plaintiff must still demonstrate that *injury* of the disclosure of her PII to an unauthorized third-party is *actual* or *imminent* in order to demonstrate Article III standing to bring her claims. *See Bohnak*, 79 F.4th at 287 (emphasis added). To satisfy the "actual or imminent" requirement for standing, the Second Circuit has explained that "to establish an injury in fact based on the disclosure of a plaintiff's PII, the plaintiff must either demonstrate *actual* injuries from the disclosure or 'a *substantial* risk of harm' under the *McMorris* factors." *Cantinieri*, 2024 WL 5202579 at *11 (citing *Bohnak*, 79 F.4th at 288) (emphasis added); *see also McMorris*, 995 F.3d at 299.

Here, as discussed above, Plaintiff has not alleged any *actual* injuries, nor has she alleged a *substantial* risk of harm to her stemming from the disclosure of her online activity and information to Defendant's third-party vendors. *See* discussions at Section III.B-D *supra*.

**F. The Alleged Violations of Plaintiff's Statutory Rights Do Not, By Themselves, Suffice for Article III Standing.**

Plaintiff contends she was injured by Defendant's violation of the statutory privacy and consumer rights afforded to her under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq*., and under New York's Deceptive Trade Practices Act ("NYDTPA"), New York Gen. Bus. Law § 349. SAC ¶¶ 20, 144; *see also id.* ¶ 21. However, the Southern District of New York reconfirmed just three weeks ago, that under *TransUnion* and in the Second Circuit, "[a]n allegation of 'bare procedural violations, divorced from any concrete harm . . . does not suffice for Article III standing.'" *Xu*, 2025 WL 488501, at *3 (quoting *TransUnion*, 594 U.S. at 440). Indeed, "[i]njury in fact does not necessarily exist merely because 'a statute grants a person

a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id*. (quoting *Spokeo*, 578 U.S. at 341).

As in *Xu*, a similar web tracking lawsuit, Plaintiff's contention that Defendant violated her statutorily-protected rights under the ECPA and NYDTPA does ***not***, without more, constitute concrete harm sufficient to confer Article III standing. *See Xu*, 2025 WL 488501, at *3-4 (holding plaintiff "alleges only a 'bare procedural violation'[]—that Reuters collected the IP address of Xu's device without court authorization—entirely 'divorced from any concrete harm' and collecting similarly dismissed federal web tracking cases for lack of Article III standing (internal citation omitted)).

Because, as discussed in Section III.B-E above, Plaintiff has failed to identify any concrete, particularized, and actual or imminent injuries independent of the mere violation of Plaintiff's statutory rights, Plaintiff lacks Article III standing to pursue any of her claims in court and, thereby, her Second Amended Complaint must be dismissed under Rule 12(b)(1) with prejudice.

## IV. PLAINTIFF FAILS TO PLEAD ANY PLAUSIBLE CLAIM FOR RELIEF UNDER RULE 12(B)(6)

### A. Legal Standard For Dismissal Under Rule 12(b)(6).

A motion to dismiss should be granted when the complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must plead facts sufficient for a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although the court is required to accept well-pleaded factual allegations as true, it need not accept legal conclusions. *Id*. For the reasons explained below, Plaintiff's Second Amended Complaint

fails to plead *any* plausible claim for relief and, therefore, should be dismissed in its entirety with prejudice under Rule 12(b)(6).

### B. Plaintiff Fails to State Claims for Breach of Contract and Breach of Implied Contract (Counts I & IV)

Plaintiff's contract claims fail because: (i) she does not identify the terms of the contract that govern the conduct alleged, (ii) she does not allege which terms were breached, (iii) she does not allege how they were breached, and (iv) she does not identify *any* actual damages or injury that resulted from the breach. But even if she did, she admits she relied upon and consented to Defendant's Privacy Notice (defined below), which explicitly discloses data collection by the very third-party web technologies of which she now complains, and ignorance of these terms is no defense.

#### 1. Plaintiff fails to plead a breach of contract claim.

To survive a motion to dismiss, Plaintiff must plead the following four elements to support her breach of contract claim: (1) the existence of a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract; and (4) damages caused by the breach. *See Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999) (citation omitted). Here, Plaintiff has failed to plausibly plead *any* element of her breach of contract claim.

*First*, critical to any breach of contract claim is Plaintiff's identification of the contract and specific terms that allegedly govern the conduct at issue. "[A] complaint must at least set forth the terms of the agreement upon which liability is predicated by express reference. […] Without pleading the terms of the contract or contracts that [plaintiff] relies upon, [their] claim fails." *Yanes v. Ocwen Loan Servicing, LLC*, No. 13-CV-2343 JS ARL, 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015) (dismissing breach of contract claim) (citations and internal quotation marks omitted). Instead of pleading the specific contract at issue, Plaintiff only vaguely alleges that she "and Class

Members entered into contracts with Defendant by which Defendant agreed to safeguard and protect [their] information, in its HIPAA Notice of Privacy Practices *and elsewhere*, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen." SAC ¶ 165 (emphasis added). Other than referring to the HIPAA Notice of Privacy Practices ("HIPAA Notice") *as an example*, it is unclear from Plaintiff's Second Amended Complaint which documents Plaintiff claims control the parties' alleged contractual relationship—*i.e.*, what other contracts are encompassed by the reference to agreements that are "elsewhere".

In a similar vein, Plaintiff never identifies the *specific* contractual provisions breached or how they were breached. "[T]o state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of the contract that were breached." *NFA Grp. v. Lotus Rsch., Inc.*, 180 A.D.3d 1060, 1061 (2020) (citation and internal quotation marks omitted). At most, Plaintiff alleges generically that: "Defendant's relevant HIPAA Notice of Privacy Practices *and representations* require it to take appropriate steps to safeguard the Private Information entrusted to it by the Plaintiff and Class Members." SAC ¶ 167; *see also id.* ¶ 165 ("Defendant agreed to safeguard and protect [Plaintiff's] information"). And when describing the alleged breach, Plaintiff offers no greater detail: "Defendant breached *the contracts* it made with Plaintiff and Class Members by failing to safeguard and protect their Private Information, and by failing to provide timely and accurate notice to them that the Private Information was compromised as a result of the Defendant sharing the Private Information with third parties without proper authorization." *Id.* ¶ 169.

Even if Plaintiff plausibly alleged the terms of the contracts at issue and how they were breached (though she did not), Plaintiff fails to allege *any* damages caused by a breach. "[F]actual

allegations showing ***damages are essential***: In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint." *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014) (citations and internal quotation marks omitted) (emphasis added), *aff'd sub nom. Maria Re Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015). There are *no* facts in the Amended Complaint about specific harm Plaintiff suffered or *any actual* damages she suffered as a result of Defendant's alleged breach. Instead, she relies solely on conclusory, unsupported statements that simply parrot back the elements for breach of contract, such as: "Defendant breached these agreements, which directly and/or proximately caused Plaintiff and Class Members to suffer damages, including nominal damages." SAC ¶ 168.

Finally, there can be no breach because Plaintiff admits in her Second Amended Complaint that she relied upon contracts that disclosed the very third-party data collection of which she now complains. Specifically, Plaintiff *admits* she relied on Defendant's HIPAA Notice *and* the Website Privacy and Security Policy ("Privacy Notice"). *See, e.g.,* SAC ¶ 165 ("Plaintiff […] entered into contracts with Defendant by which Defendant agreed to safeguard and protect such information, in its HIPAA Notice of Privacy Practices and elsewhere[.]"); *id.* ¶ 219 ("Plaintiff's reasonable expectations of privacy in the communications exchanged with Defendant were further buttressed by Defendant's express promises in its HIPAA Notice of Privacy Practices *and Website Privacy and Security Policy*.") (emphasis added). Relevant to Plaintiff's claims here, the Privacy Notice[2]

[2] The only indication of when Plaintiff last visited the Website is a reference to March 2023. SAC ¶ 135 ("As a condition of using Defendant's services, Plaintiff Cavallaro-Kearins disclosed her Private Information to Defendant as recently in March 2023."). The Privacy Notice has been effective since August 23, 2016, and may considered by this Court due to its incorporation be reference in the Amended Complaint. *See* Rollins Decl., Ex. A; *see also Prime Contractors, Inc. v. APS Contractors Inc.*, No. 22-CV-1581 (WFK), 2024 WL 4511601, at *7 (E.D.N.Y. Oct. 17, 2024) (stating that when assessing a Rule 12(b)(6) motion to dismiss, courts may consider "any document attached to the complaint, any statements or documents incorporated in the complaint

***explicitly*** discusses working with third parties to collect user data via web technologies for marketing purposes:

> We use different kinds of tracking technology to help us improve our website and our communications to you. For example, we collect tracking information by following your "footsteps" on our website. […] We may use different kinds of cookies, depending on which part of our site you visit: […] **We work with companies that collect information about your online activities to provide advertising targeted to suit your interests and preferences**. For example, you may see certain ads on this website or other websites because we contract with Facebook or similar companies to target our ads based on information we or they have collected, including information that was collected through automated means (such as cookies and web pixels). **These companies also use automated technologies to collect information when you click on our ads, which helps track and manage the effectiveness of our marketing efforts**.

Declaration of Kari M. Rollins ("Rollins Decl."), Ex. A. Despite Plaintiff's admission that she relied upon and agreed to the Privacy Notice (SAC ¶ 219), absent from her Second Amended Complaint is any acknowledgment that the Privacy Notice explicitly discloses the collection and sharing of data via the use of third-party web technologies. *See* Rollins Decl., Ex. A. Plaintiff cannot pick and choose the terms of the contract—*i.e.*, Privacy Notice—she wants to enforce and claim ignorance of the rest. Because Plaintiff admits relying on *and consenting to* the Privacy Notice that explicitly disclosed Defendant's data collection via third-party web technologies, Plaintiff's breach of contract claim fails as a matter of law and must be dismissed.

**2. Plaintiff's breach of implied contract claims similarly fails.**

"An implied contract requires the same elements as an express contract, including consideration, mutual assent, legal capacity and legal subject matter […] [and] [i]t also requires a

---

by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.") (citation omitted).

showing that there was a meeting of the minds." *Piuggi v. Good for You Prods. LLC*, No. 23 CIV. 3665 (VM), 2024 WL 3274638, at *14 (S.D.N.Y. July 2, 2024) (citations and internal quotation marks omitted). Plaintiff's implied contract claim fails for the same reasons her express contract claim fails—she fails to articulate the specific terms of the contract at issue, which terms were breached, and how they were breached; she fails to identify *any* actual damages caused by a breach; *and* she admits she relied upon and consented to the Privacy Notice which discloses the use of third-party web technologies and their data collection and sharing practices.

Moreover, there can be no claim for breach of implied contract claim when a breach of confidence is also pled in cases, such as this, involving unauthorized disclosure of health information. *See Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340 at *10 (W.D.N.Y. Mar. 19, 2024) ("Courts addressing claims of unauthorized disclosure of health-related information have repeatedly rejected implied contract claims in favor of breach of confidence claims."). Plaintiff's breach of implied contract claim fails and must be dismissed.

### C. Plaintiff Fails to State a Claim For Breach of Fiduciary Duty and Breach of Confidence (Counts II & V)

As discussed below, Plaintiff fails to state a claim for breach of fiduciary duty or breach of confidence because she has not alleged the requisite relationship of trust and confidence exists between her and Defendant. But even if she did, there is no *fiduciary* duty under New York law extending from insurer to insured outside the context of defending claims against the insured.

#### 1. Plaintiff fails to plead a breach of fiduciary duty claim.

"A fiduciary duty arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 503 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (citation and

internal quotation marks omitted). In order to meet this standard, a complaint must allege adequate facts to support the contention that parties were in a relationship "of sufficient trust or confidence" to give rise to such fiduciary obligations. *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010) (finding that the complainant had to allege more than mere conclusory statements about the nature of the parties' relationship, particularly when the contractual provisions were quite standard and did not suggest that the parties had "relations of a mutual and confidential nature."); *see also Gasery v. Kalakuta Sunrise*, LLC, 422 F. Supp. 3d 807, 819 (S.D.N.Y. 2019) ("In order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether" a fiduciary relationship exists) (citation and internal quotation marks omitted). Here, Plaintiff merely alleges that "[a] relationship existed […] in which Plaintiff and Class Members put their trust in Defendant to protect the Private Information of Plaintiff and Class Members, and Defendant accepted that trust." SAC ¶ 173. These are precisely the type of conclusory allegations, lacking specificity, which are insufficient to establish a fiduciary duty. *See Gasery*, 422 F. Supp. at 819; *Stadt*, 719 F. Supp. 2d at 323. Beyond that, Plaintiff alleges only that she visited Defendant's Website to find dentists in her plan and thereby provided Defendant with personal information (SAC ¶¶ 2-3). Plaintiff's visit to and activity on Defendant's Website, on its own, cannot establish a fiduciary relationship.

But, even if Plaintiff pled with more specificity, there is no fiduciary duty under New York law extending from insurer to insured outside the context of defending claims against the insured. *See Neurological Surgery, P.C. v. MLMIC Ins. Co.*, 208 A.D.3d 1238, 1240 (2022) ("Generally, an insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured") (citation and internal quotation marks omitted); *Fiala v.*

*Metro. Life Ins. Co.*, 6 A.D.3d 320, 322 (2004) ("an insurance company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured"). By Plaintiff's own admission, this is precisely the relationship that exists between her and Defendant. *See* SAC ¶ 145 ("Plaintiff Cavallaro-Kearins has dental insurance through Delta Dental provided by her employer."). Further, as discussed above (*see* Section IV.B), Plaintiff relied upon the Privacy Notice, which disclosed the conduct of which she now complains. Thus, even if Defendant owed a fiduciary duty to Plaintiff (it did not), Plaintiff agreed to the alleged data collection and disclosure. Plaintiff's claim for breach of fiduciary duty fails as a matter of law and must be dismissed.

**2. Plaintiff's breach of confidence claim similarly fails.**

In order to state a claim for breach of confidence, a plaintiff must plead: "(i) the defendant assumed a duty of confidentiality, (ii) the defendant intentionally, knowingly, or negligently breached that duty, and (iii) the plaintiff was damaged as a result of that breach." *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 385 (S.D.N.Y. 2024) (citation and internal quotation marks omitted). Courts have held that a claim for breach of an assumed duty of confidentiality is essentially duplicative of a claim for breach of fiduciary duty. *Kane*, 2024 WL 1178340, at *14. "In other words, whether cast as a 'breach of confidence' or a 'breach of fiduciary duty of confidentiality,' the core of Plaintiffs' claim is the same: that Defendant owed them a duty of confidentiality *arising out of the* ***fiduciary*** *relationship* between Defendant and Plaintiffs." *Id.* (emphasis added). As such, Plaintiff's breach of confidence claim fails for all the same reasons as her breach of fiduciary duty claim. *See* Section IV.C.1. In the absence of a fiduciary relationship that extends to the conduct alleged in this case, Plaintiff's breach of confidence claim must be dismissed.

### D. Plaintiff Fails To State a Claim for Unjust Enrichment

To state a cause of action for unjust enrichment, "the plaintiff must allege that '(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered.'" *Georgia Malone & Co., Inc. v. Reider*, 19 N.Y.3d 511, 516 (2012) (citation omitted). Unjust enrichment claims cannot duplicate conventional contract or tort claims, *even when pled in the alternative*. *Addi v. Int'l Bus. Machines, Inc.*, No. 23 CIV. 5203 (NSR), 2024 WL 2802863 at *5 (S.D.N.Y. May 31, 2024) ("Even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."). Instead, unjust enrichment "is available only in *unusual* situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Carovillano v. Sirius XM Radio Inc.*, No. 23 CIV. 4723 (PAE), 2024 WL 450040, *13 (S.D.N.Y. Feb. 6, 2024) (citation and internal quotation marks omitted) (emphasis added). This is not an unusual case, and Plaintiff's unjust enrichment claim must be dismissed.

Here, the crux of Plaintiff's unjust enrichment claim revolves around the same set of allegations as Plaintiff's contract claims and her tort-based claims for breach of confidence and breach of fiduciary duty. Those allegations are: Defendant collected Plaintiff's personal information via the use of third-party web technologies; Defendant shared such information with the third-party web technology vendors in violation of Defendant's privacy promises to Plaintiff; Defendant did not obtain Plaintiff's consent to share; Defendant benefitted from sharing Plaintiff's information with its vendors; and Defendant did not compensate Plaintiff for the beneficial collection and use of her information. *See* SAC ¶¶ 162-210 (reflecting Plaintiff's allegations supporting her contract and tort-based claims). In short, Plaintiff alleges Defendant was "unjustly

enriched" when it collected Plaintiff's information via web technologies and shared it with the third-party web technology providers without her alleged consent (*see id.* ¶¶ 182-85), which is the same alleged misconduct supporting Plaintiff's contract and tort claims. *Compare id*. ¶¶ 162-178, 187-210.

Because Plaintiff's unjust enrichment claim does nothing more than duplicate her other tort and contract claims, it must be dismissed. *See Gay v. Garnet Health*, 23-cv-06950 (NSR), 2024 WL 4203263, at *6 (S.D.N.Y. Sept. 16, 2024) (dismissing unjust enrichment claim in web tracking litigation because the claim alleged the same facts as plaintiff's breach of fiduciary duty and breach of confidentiality claims).

**E. Plaintiffs Fail To State a Claim for Bailment (Count VI)**

"[T]o state a claim for breach of a bailment, the bailor must plead the bailee failed to exercise care and diligence in protecting and keeping safe the bailor's property." *Wallace v. Health Quest Sys., Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *13 (S.D.N.Y. Mar. 23, 2021) (citation omitted). "Under New York law, bailments may be actual or constructive […] [and] a constructive bailment arises when a defendant takes lawful possession of the property of another and has a duty to account for that property, without intending to appropriate it." *Id*. at 14 (citations omitted). In sum, claims for bailment arise from instances in which a plaintiff has delivered her property to a defendant for safekeeping and reasonable care. This is not the case here, and no claim for bailment can stand on the allegations in the Second Amended Complaint.

At the heart of Plaintiff's lawsuit is the claim that Defendant intercepted and surreptitiously collected and transmitted her personal information via undisclosed third-party web technologies. *See, e.g.*, SAC ¶¶ 30, 73, 238-40 (alleging, for example, "[b]y installing and implementing the Tracking Technologies, Defendant caused Plaintiff's and Class Members' communications to be *intercepted* and transmitted to Google, Adobe, Datadog, and Qualtrics via their Tracking Technologies."); *id*. ¶¶ 11, 77 (alleging Defendant "*surreptitiously* tracked, recorded, and

disclosed Plaintiff's and Class Members' confidential communications, personally identifiable information, and protected health information to a third party"); *id*. ¶ 146 ("Plaintiff did not know (and had no way of knowing) that her Private Information was *intercepted* and unlawfully disclosed because Defendant *kept this information secret*."). This is the antithesis of the factual basis for a bailment claim. As such, Plaintiff's claim for bailment fails and must be dismissed.

**F. Plaintiff Fails to State a Claim for Violation of New York GBL § 349 (Count VII)**

Plaintiff fails to state a claim for a violation of New York GBL § 349. "To successfully assert a section 349(h) claim, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (N.Y. 2009).

*First*, Plaintiff has not stated a claim because she does not allege any actual misrepresentation that she relied upon. She claims to have relied upon the HIPAA Notice and Privacy Notice. SAC ¶ 219. But the Privacy Notice specifically mentions tracking for marketing purposes. *See* Rollins Decl., Ex. A (Privacy Notice ) ("We work with companies that collect information about your online activities to provide advertising targeted to suit your interests and preferences. […] These companies also use automated technologies to collect information when you click on our ads, which helps track and manage the effectiveness of our marketing efforts.").

Second, Plaintiff has failed to allege that she suffered actual injury as a result of her data being collected and used for marketing purposes. A claim under the GBL requires the plaintiff to show she suffered actual injury. *See e.g., Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608 (S.D.N.Y. 2009) (explaining that injury requirements in data breach cases must go beyond time and energy spent responding and increased risk of identity theft); *see also Shafran v. Harley-Davidson, Inc.*, 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) ("Courts have uniformly ruled

that the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy."). Plaintiff has not alleged facts showing that she specifically suffered any actual harm, including specific financial loss or even examples of unwanted solicitations.

### G. Plaintiff Fails to State a Claim For Violation of The Wiretap Act, 18 USC 2511(1) (Count VIII)

Plaintiff alleges that, by utilizing standard tracking technologies to monitor user analytics and trends on its Website, Defendant has violated Section 2511(1)(a) of the Federal Wiretap Act, which prohibits, in part, the intentional interception of electronic communications. *See* 18 U.S.C. § 2511(1)(a). However, one of the statute's many exceptions states that it is not unlawful "to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Where a user "communicates" with a website, that website operator is considered a party to the communications, insofar as they are the intended recipient. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001) (finding that websites affiliated with Defendant were parties to the communications at issue and had consented to interception). In this case, Defendant, as the website operator, is the intended recipient. *See* SAC ¶ 238. And even if it could be said that Defendant "intercepted" communications that were intended for them, it follows that they consented to that interception. One party's consent to the interception is sufficient to bar liability. *Id*. Defendant's consent to the alleged interception therefore excludes liability under section 2511(1)(a).

Additionally, Plaintiff, as the originator of the communications at issue and therefore a party to them, consented to Defendant's use of the tracking technologies and, consequently, the alleged interception. Plaintiff alleges that her reasonable expectation of privacy was based on both

the HIPAA Notice and the Privacy Notice. SAC ¶ 219. The Privacy Notice, which Plaintiff tellingly failed to provide in her Second Amended Complaint, clearly contemplates the use of the technologies that Plaintiff now complains of. *See* Rollins Decl., Ex. A (Privacy Notice ) ("We work with companies that collect information about your online activities to provide advertising targeted to suit your interests and preferences. […] These companies also use automated technologies to collect information when you click on our ads, which helps track and manage the effectiveness of our marketing efforts."). Although Plaintiff may contest the veracity of her consent, in the context of the Wiretap Act, "[t]he Second Circuit construes 'consent' broadly, and consent may be express or implied." *Kwok Sze v. Pui-Ling Pang*, No. 15-CV-447 CS, 2015 WL 6867134 at *3 (S.D.N.Y. Nov. 9, 2015) (citation omitted). Here, Plaintiff's admitted reliance on the Privacy Notice as a condition of using the Website, exemplifies her consent. Consent to the use of tracking technologies serves as a bar to liability in this case insofar as the exception for the consent of a party to the communication provided by section 2511(2)(d) applies to Plaintiff as well.

Plaintiff may argue that the crime-tort exception to the one-party consent rule applies in this case. The crime-tort exception provides that, even if one party consents to the interception as permitted by section 2511(2)(d), if that party had a criminal or tortious intent in doing so, they can still be liable under section 2511(1)(a). *See* 18 U.S.C. § 2511(2)(d); *Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877 at *3 (S.D.N.Y. July 12, 2018). To survive a motion to dismiss, a plaintiff invoking this exception must plead sufficient facts to support an inference that the defendant "intercepted the communication for the purpose of a tortious or criminal act that is *independent of the intentional act of recording*." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d. Cir. 2010) (emphasis added). Courts have interpreted this requirement to mean that any alleged tort or crime resulting from the interception must have been intended at the outset. *See Cohen*, *supra*, at

*4; *see also United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (stating that the "carve-out within § 2511(2)(d) […] is to be construed narrowly. It is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party."). Where plaintiffs allege other motivations for interception, the crime-tort exception fails. *Id.* At the outset, Plaintiff alleges that Defendant's motive in setting up these tracking technologies was to "improve its return on its marketing spend and, ultimately, to increase its revenue." SAC ¶ 2. This is clearly distinct from any intent to commit tortious or criminal behavior. Plaintiff fails to allege that Defendant intended to commit a crime or tort separate from the interception itself when they implemented the tracking technologies at issue, rendering the crime-tort exception inapplicable.

Furthermore, courts in this circuit have held that intent to violate HIPAA is insufficient for crime-tort exception purposes. *See, e.g.*, *Cooper v. Mount Sinai Health Sys., Inc.*, No. 23 CIV. 9485 (PAE), 2024 WL 3586357 at *5-10 (S.D.N.Y. July 30, 2024); *Gay*, 2024 WL 4203263 at *3; *Kane*, 2024 WL 1178340 at *4-8. However, in this case, Plaintiff does not allege that Defendant's goal at the time of the alleged interception was to violate HIPAA; she merely alleges violations of invasion of privacy (which, as previously mentioned (*see* Dkt. 15), is not a viable claim in New York) and NY GBL § 349, the latter of which courts have found insufficient in the crime-tort exception context insofar as it is not independent of the act of recording itself. SAC ¶ 248; *see also Cohen v. Casper Sleep Inc.*, 2018 WL 3392877 at *4. Courts in other circuits have found that even when sufficiently pled, alleging a violation of HIPAA as the criminal or tortious intent is still necessarily bound by the act of interception itself and therefore insufficient to establish the crime-tort exception. *See e.g., Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779 *4-5 (D. Minn. Mar. 26, 2024). As Plaintiff cannot establish that Defendant had a criminal or

tortious motivation in implementing the tracking technologies, she cannot support a claim for interception under section 2511(1)(a) of the Wiretap Act.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's entire Second Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

Dated: March 7, 2025

Respectfully submitted,

/s/ *Kari M. Rollins*
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Kari M. Rollins, NY State Bar No. 5552468
Charles Glover, NY State Bar No. 5329909
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
Facsimile: 212.653.8701
E-mail: krollins@sheppardmullin.com
E-mail: cglover@sheppardmullin.com

Wynter L. Deagle (*Pro Hac Vice*)
12275 El Camino Real, Ste 100
San Diego, CA 92130
Telephone: 858.720.8947
Facsimile: 858.509.3691
E-mail: wdeagle@sheppardmullin.com

Samuel Hyams-Millard (*Pro Hac Vice* Forthcoming)
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
E-mail: shyams-millard@sheppardmullin.com

*Attorneys for Defendant Delta Dental of New York, Inc.*