**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PATRICIA CAVALLARO-KEARINS, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

DELTA DENTAL OF NEW YORK, INC.,

*Defendant.*

Case No. 7:24-cv-06946-CS

**PLAINTIFF'S OPPOSITION TO DEFENDANT DELTA DENTAL OF NEW YORK, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **1**

**ARGUMENT** .......... **2**

I. DDNY'S RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF STANDING SHOULD BE DENIED. .......... 2

II. DDNY'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED. .......... 8

*A. Breach of Contract and Breach of Implied Contract* .......... *8*

*B. Plaintiff States a Claim for Breach of Fiduciary Duty and Breach of Confidence* .......... *14*

*C. Plaintiff States a Claim for Unjust Enrichment* .......... *16*

*D. Plaintiff States a Claim for Bailment* .......... *16*

*E. Plaintiff States a Claim under New York GBL § 349* .......... *17*

*F. Plaintiff States a Claim under ECPA, 18 USC 2511(1)* .......... *20*

**CONCLUSION** .......... **24**

# TABLE OF AUTHORITIES

CASES

*A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)------------------------8

*Anonymous v. CVS Corporation*, 728 N.Y.S.2d 333 (Sup. Ct. 2001)------------------------------- 19

*Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609 (S.D.N.Y. 2003) --------------------- 16

*Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal. 2023) ---------------- 12

*Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276 (2d Cir. 2023)----------------------3

Bose v. Interclick, Inc., 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)-------------------------18, 19

*Brady v. Anker Innovations Ltd.*, 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) -------------------- 17

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ------------------------------------- 23

*Cantinieri v. Verisk Analytics, Inc.*, 2024 WL 5202579 (E.D.N.Y. Dec. 23, 2024) --------------5, 6

Castillo v. CostCo Wholesale Corp., 2024 WL 4785136 (W.D. Wash. 2024) -------------------- 22

*Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357 (S.D.N.Y. July 30, 2024) ---8, 15, 22

*Daly v. Metro. Life Ins. Co.*, 4 Misc. 3d 887 (Sup. Ct. N.Y. Cty. 2004)------------------------14, 15

*Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024)------------------------------------- 12

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-CV-03580-WHO, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) --------------- 23

*Doe v. Microsoft Corp.*, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)---------------------------4

*Edwards v. MUBI, Inc.*, 2025 WL 985130 (N.D. Cal. Mar. 31, 2025) -------------------------------4

*Eidelman v. Sun Prods. Corp.*, 2022 WL 1929250 (2d Cir. June 6, 2022)------------------------ 18

Eletson Holdings, Inc. v. Levona Holdings Ltd., 731 F. Supp. 3d 531 (S.D.N.Y. 2024) -----------7

*Esparza v. Kohl's, Inc.*, 2024 WL 1152732 (S.D. Cal. 2024)--------------------------------------- 12

*Fan v. NBA Properties Inc.*, 2024 WL 1297643 (N.D. Cal. 2024)---------------------------------- 12

*Gay v. Garnet Health*, 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)---------------------- 15, 21, 22

Harsco Corp. v. Segui, 91 F.3d 337 (2d Cir. 1996)----------------------------------------------------8

*Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239 (E.D.N.Y. 2019) -------------------------------- 18

*In re Christie's Data Breach Litig.*, 2025 WL 552049 (S.D.N.Y. Feb. 19, 2025) ----------------6, 7

In re Grp. Health Plan Litig., 709 F. Supp. 3d 707 (D. Minn. 2023)--------------------------------- 22

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447 (D. Md. 2020) 5

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) ---------------------12, 23

*Jones v. Com. Bancorp, Inc.*, 2006 WL 1409492 (S.D.N.Y. May 23, 2006) ----------------------- 14

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023)-----------------------------------------------4

*K.L. v. Legacy Health*, 2024 WL 4794657 (D. Or. Nov. 14, 2024) --------------------------------- 24

*Kacocha v. Nestle Purina Petcare Co*., No. 15-CV-5489 (KMK), 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)------------------------------------------------------------------------------------ 17

*Kane v. Univ. of Rochester*, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)-------------------passim

*Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)------------------ 17

*Lee v. Springer Nature Am., Inc.*, 2025 WL 692152 (S.D.N.Y. Mar. 4, 2025) -----------------------4

*Leibowitz v. Cornell Univ*., 584 F.3d 487 (2d Cir. 2009) -------------------------------------------- 13

*Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 WL 963779 (N.D. Ill. Mar. 31, 2025) - 23

*McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021) ----------------------------6

*Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260 (D. Minn. Mar. 28, 2024)----------------- 24

*Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) -------------------------------------2

Miller v. Syracuse Univ., 662 F. Supp. 3d 338 (N.D.N.Y. 2023) --------------------------------------9

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) - 13

*Myerson v. Prime Realty Servs., LLC*, 796 N.Y.S.2d 848 (Sup. Ct. 2005)------------------------- 19

*Okash v. Essentia Health*, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ----------------------23, 24

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741 (1995)- 17

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005) ---------------------- 18

*Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017)------------------------ 13

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) ---------------------------------2, 3

*Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415 (S.D.N.Y. 2020) -------------------- 18

*Stein v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ----------- 21, 23, 24

*Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552 (D. Ariz. Jan. 28, 2025) ------------------------------------------------------------------------------------- 22

*Stutman v. Chem. Bank*, 731 N.E.2d 608 (2000)-----------------------------------------------17, 18

*Sussman v. Am. Broadcasting Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999) ------------------ 23

Sweat v. Houston Methodist Hosp., 2024 WL 3070184 (S.D. Tex. 2024)------------------------ 22

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)-------------------------------------------------2

*Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ---------8, 14, 16

*Xu v. Reuters News & Media, Inc.*, 2025 WL 488501 S.D.N.Y. Feb. 13, 2025) --------------------5

*Yanes v. Ocwen Loan Servicing, LLC*, 2015 WL 631962 (E.D.N.Y. Feb. 12, 2015) -------------- 11

*Young v. U.S. Dep't of Justice*, 882 F.2d 633 (2d Cir. 1989) ---------------------------------------- 15

Plaintiff Patricia Cavallaro-Kearins submits this memorandum of law in opposition to Delta Dental of New York, Inc.'s ("DDNY" or "Defendant") Motion to Dismiss the Second Amended Complaint (ECFs 29, 30).

## INTRODUCTION

DDNY is a health insurance provider that offers its plan members an online patient portal to communicate with DDNY and access plan benefits. Unbeknownst to plan members, DDNY incorporated hidden tracking technologies into the portal that disclosed plan member's communications with DDNY to four third party marketing and analytics companies. The information disclosed included users' status as DDNY plan members and the health care providers those users searched for on the patient portal. The Complaint alleges that these disclosures violated HIPAA, regulations and guidance published thereunder, and various state and federal laws. Courts in this District have recently sustained all of the claims at issue (in line with the consensus of federal courts around the country), and DDNY's arguments have all been raised and rejected on similar facts.

## BACKGROUND

DDNY operates a patient healthcare portal—www1.deltadentalins.com—where its plan members can, among other things, communicate with DDNY and access plan benefits, including by finding in-network dentists that are located close by and that fit their personal preferences. ECF 19 ¶ 2. DDNY integrated hidden tracking technologies into the portal provided by four third-party marketing and analytics companies: Adobe, Google, Datadog, and Qualtrics (the "Tracking Technology Vendors"). *Id.* ¶ 4. These technologies collected plan member communications with DDNY—including personally identifiable information ("PII") and protected health information ("PHI") under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (PII

and PHI, collectively, "Private Information")—and disclosed that Private Information to the third-party Tracking Technology Vendors. *Id.* ¶¶ 48-78. The Private Information DDNY disclosed included communications identifying Plaintiff and class members as DDNY plan members and specific details about the dentists they were searching for on DDNY's portal, including the exact search terms used to search for treatment. *Id.* ¶ 6, 55-61, 66. These communications were disclosed alongside unique identifiers associated with the specific plan member interacting with DDNY's patient portal. *Id.* ¶¶ 58, 62, 64.

Plaintiff is a DDNY plan member that used the patient portal to find a dentist and whose Private Information was disclosed to the Tracking Technology Vendors in the manner described above. *Id.* ¶¶ 23, 135-145. Moreover, although Plaintiff continues to have DDNY insurance through her employer, Plaintiff cannot presently access her plan benefits on DDNY's portal without DDNY unlawfully disclosing her PII and PHI to the Tracking Technology Vendors. *Id.*

## ARGUMENT

### I. DDNY's Rule 12(b)(1) Motion to Dismiss for Lack of Standing Should Be Denied.

DDNY argues that federal courts lack subject matter jurisdiction because Plaintiff lacks Article III standing. ECF 29 at 3-10. Article III standing requires that the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92 (2d Cir. 2019). DDNY challenges only the injury-in-fact element. ECF 29 at 3-10. When assessing DDNY's argument, the Court must "accept as true all material allegations of the complaint," and construe them "in favor of the complaining party." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 540 (2d Cir. 2024).

A plaintiff has Article III standing where she was "concretely harmed" by a defendant's violation of her legal rights. *Salazar*, 118 F.4th at 541 (quoting *TransUnion LLC v. Ramirez*, 594

U.S. 413, 427 (2021)). To allege a concrete harm, the asserted injury must have a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* (internal quotations omitted; citing Supreme Court and Second Circuit precedent). Harms that have such a relationship can be either tangible (*e.g.*, money harms) or intangible (*e.g.*, privacy violations). *Id.* "One intangible harm that readily qualifies as concrete is the public disclosure of private facts." *Id.*; *see also TransUnion*, 594 U.S. at 425 ("disclosure of private information" is an intangible harm that satisfies Article III's injury-in-fact requirement); *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023) ("In *TransUnion* itself, the Supreme Court specifically recognized that 'disclosure of private information' was an intangible harm 'traditionally recognized as providing a basis for lawsuits in American courts.'").

Plaintiff alleges both intangible and tangible harms. With respect to the former, Plaintiff alleges that DDNY disclosed her identity and protected health information to third-party marketing and analytics companies—the Tracking Technology Vendors. *E.g.*, ECF 19 ¶¶ 1, 4-7, 52-67. With respect to the latter, Plaintiff alleges that the data that was taken had value, that DDNY took the data without consent and without compensating Plaintiff, and that, as a result, Plaintiff was deprived of the benefit of her bargain with DDNY (which included medical insurance at a fixed price *without* the additional consideration of Plaintiff providing her PHI free of charge to facilitate DDNY's marketing). *Id.* ¶¶ 116-134.

The intangible privacy injury alone is enough to show Article III standing. For example, in *Salazar*, the plaintiff's "core allegation [wa]s that his personally identifiable information was exposed to an unauthorized third party" via an online tracking technology. *Salazar*, 118 F.4th at 542. The Second Circuit had "no trouble" holding that the alleged harm was "sufficiently concrete" because the alleged privacy injury was "closely related" to the common-law claim for "public

disclosure of private facts." *Id.* at 541-42. The court made clear: "exposure of … personally identifiable information to unauthorized third parties" is a concrete, intangible harm sufficient to support Article III standing. *Id.* at 541. For the same reasons, federal courts in this Circuit and around the country have held that the intangible privacy injury caused by the unauthorized disclosure of sensitive personal information, including via website tracking technology, is sufficient to support Article III standing. *E.g.*, *Lee v. Springer Nature Am., Inc.*, 2025 WL 692152, at *6 (S.D.N.Y. Mar. 4, 2025) (disclosure of private information via online tracking technology sufficient to confer standing under *TransUnion* and *Salazar*); *Jones v. Ford Motor Co.*, 85 F.4th 570, 573-574 (9th Cir. 2023) ("With respect to constitutional injury-in-fact, the relevant law is settled[;] [a] statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing."); *Edwards v. MUBI, Inc.*, 2025 WL 985130, at *3 (N.D. Cal. Mar. 31, 2025) ("The disclosure of private information [via online tracking technology] is an 'intangible harm' that satisfies Article III standing").

The standing analysis here is indistinguishable from *Salazar*. Like *Salazar*, Plaintiff's core allegation is that her sensitive and private information was exposed to an unauthorized third party via online tracking technology. ECF 19 ¶¶ 1-20. And, like *Salazar*, Plaintiff alleges not only that this information was exposed to the third party, but also that it was disclosed as a result of an arrangement between DDNY and the Tracking Technology Vendors pursuant to which DDNY deliberately used the tracking technology for DDNY's and the Tracking Technology Vendor's mutual benefit. *Id.*; *see also id.* ¶¶ 32, 47-48, 70, 116-121. As *Salazar* makes clear, the resulting privacy injury establishes Article III standing.[1]

[1] Because *Salazar* is sufficient to establish standing here, Plaintiff does not need to address standing based on another theory, such as the economic injury caused by DDNY taking the valuable data without compensation. *E.g.*, ECF ¶¶ 122-145. But such a theory would be independently sufficient to show standing too. *See, e.g.*, *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *4 (W.D. Wash. Dec. 19, 2023) (Article III

Tellingly, DDNY advances its Article III standing argument without mentioning intangible privacy injuries or *Salazar*. That decision is inexplicable as: (a) *Salazar* is a recent and controlling authority addressing the primary Article III issue in the case; and (b) Plaintiff raised *Salazar* in response to DDNY's premotion letter (ECF 18), and the Court thereafter instructed DDNY to wrestle with the caselaw identified in Plaintiff's letter (ECF 24). DDNY chose not to wrestle with *Salazar*, apparently because it cannot distinguish its holding here.

Nearly all of DDNY's Article III cases predate *Salazar*. And many of its cases are out-of-District and out-of-Circuit as well. DDNY only cites two in-Circuit cases that post-date *Salazar*. ECF 29 (citing *Xu v. Reuters News & Media, Inc.*, 2025 WL 488501 S.D.N.Y. Feb. 13, 2025) and *Cantinieri v. Verisk Analytics, Inc.*, 2024 WL 5202579 (E.D.N.Y. Dec. 23, 2024)). Neither case merits a deviation from *Salazar* here.

*Xu* addressed the unlawful collection of an IP address under California law and did not address *Salazar*. In *Xu*, the plaintiff alleged that an online tracking technology intercepted the IP address of the device connecting to Reuters' news website. *Xu*, 2025 WL 488501 at *1. The technologies at issue did *not* collect the contents of the plaintiff's communications with the website or any "sensitive or personally identifying information" about the plaintiff. *Id.* at *1, 3. The court concluded that the mere collection of a device's IP address, without more, was not a concrete injury to the plaintiff and was instead, at most, a "procedural" violation of the statutes at issue. *Id.* at *3.

---

standing where the plaintiff "alleges that her personal data carries financial value . . ."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("Here plaintiffs have adequately pled that the personal identifying information collected by Marriott has value. Plaintiffs allege that Marriott recognizes the value of this information and collects it to better target customers and increase its profits.").

There is some tension between *Xu* and *Salazar*, but the Court need not address that because *Xu* is readily distinguishable on its facts. Here, like *Salazar* and unlike *Xu*, plaintiff alleges that the tracking technologies at issue collected sensitive and personally identifying information, including the contents of her communications with her health insurance company that contained protected health information under HIPAA. That is not a "procedural" violation of a statute; it is a disclosure of sensitive, personal, and protected information that gives rise to a concrete privacy injury and Article III standing.

*Cantinieri*, in turn, has been criticized by courts in this District for misapplying Second Circuit precedent. *See In re Christie's Data Breach Litig.*, 2025 WL 552049, at *2 (S.D.N.Y. Feb. 19, 2025) ("part[ing] ways" with *Cantinieri* and noting that it misreads the Second Circuit's decision in *Bohnak* and cannot be reconciled with *Salazar*). *Cantinieri* was a data breach case, and the core allegation was that the plaintiff's DMV records were accessed by cybercriminals. *Cantinieri*, 2024 WL 5202579, at *1-2. The court correctly held that the alleged injury was "concrete" and "particularized" under *Salazar*, but nevertheless found a lack of Article III standing on the grounds that the injury was not "actual or imminent" under the Second Circuit's decisions in *Bohnak* and *McMorris*. *Id.* at *11 (citing *Bohnak*, 79 F.4th at 287-88 and *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021)). The problem with *Cantinieri*'s reasoning is that the alleged injury had *already happened*, and was thus necessarily "actual" and did not need to also be analyzed for "imminence" under the Second Circuit's decision in *McMorris* (which announced factors designed to analyze whether an increased risk of *future* injury following a data breach gives rise to Article III standing). *See In re Christie's Data Breach Litig.*, 2025 WL 552049, at *2 (disagreeing with *Cantinieri* for these reasons). As Judge Furman noted in *In re Christie's Data Breach Litig.*, where the disclosure of PII "has actually happened … it need not be analyzed

using the *McMorris* [imminence] factors," and *Cantinieri* (a) misread *Bohnak*, which "applied the *McMorris* factors only to the … risk of future harm," and (b) cannot "be reconciled with *Salazar*, in which the Second Circuit applied *Bohnak*'s holding that public disclosure is itself a cognizable injury without any analysis of whether that already completed disclosure was 'actual or imminent.'" *Id.*; *see also Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 573-74 (S.D.N.Y. 2024) (citing *Bohnak* and stating that "[t]he Second Circuit has held, post-*TransUnion*, that a plaintiff whose private information has been disclosed to third parties has standing to sue regardless of whether the third parties used that information to cause additional harm."). In short, unauthorized disclosure of sensitive and personally identifying information causes a concrete, *actual* harm, and *Cantinieri*'s analysis is wrong because it imposed *McMorris*'s forward-looking imminence test to a harm that happened in the past.

For these same reasons, DDNY's argument that Plaintiff does not allege a "continued and ongoing risk" to her Private Information under *McMorris* (ECF 29 at 7-9) should also be rejected. The alleged privacy injury here *already happened* and thus need not be analyzed under the risk-of future-injury factors announced by the Second Circuit in *McMorris*. *See In re Christie's Data Breach Litig.*, 2025 WL 552049, at *2 (citing *Bohnak* and *Salazar* for the proposition that the *McMorris* factors do not apply to *past* privacy injuries). To the extent DDNY was directing its risk-of-future-injury argument at Plaintiff's request for a going-forward injunction, such an argument would fail because Plaintiff alleges that she continues to have DDNY insurance, intends to access her plan benefits on DDNY's plan-member portal in the future, and cannot presently do so without DDNY disclosing her protected health information to third parties in violation of federal law. In that regard, Plaintiff is not alleging an "increased risk" of future injury (*i.e.*, the issue in *McMorris*); she is alleging that the privacy injury at issue *will* continue to happen unless the Court

enters an injunction preventing DDNY from using the tracking technology at issue. That is more than enough to allege an "imminent" future injury and thus standing to seek a going-forward injunction.

## II. DDNY's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Should Be Denied.

Recent decisions by federal courts in this Circuit have sustained the claims at issue based on substantially similar allegations (*i.e.*, claims based on unauthorized disclosure of PHI via tracking technologies on a healthcare portal). *See Cooper v. Mount Sinai Health Sys., Inc*., 2024 WL 3586357, at *10-12 (S.D.N.Y. July 30, 2024); (breach of fiduciary duty; breach of confidence; bailment; NY GBL § 349; and 18 USC § 2511(1)); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *4, 9, 11, 14-16 (W.D.N.Y. Mar. 19, 2024) (breach of contract; unjust enrichment; bailment; NY GBL § 349; and 18 USC § 2511(1)). And DDNY's case, *Wallace*, sustained many of the same claims too. *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *9, 11-14 (S.D.N.Y. Mar. 23, 2021) (breach of implied contract; breach of confidence; and unjust enrichment). Federal courts around the country are in accord. *E.g.*, *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at *1 (N.D. Cal. Oct. 25, 2024) (sustaining negligence, breach of confidence, unjust enrichment and ECPA claims where the plaintiff alleged that the defendant "surreptitiously collected and disclosed confidential medical information, which was associated with individually identifying information, to third parties via trackers embedded in its website"). The same result should follow here.

### A. Breach of Contract and Breach of Implied Contract

#### 1. DDNY Breached its HIPAA Notice of Privacy Practices

To state a claim for breach of contract, a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see also*

*Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 362 (N.D.N.Y. 2023); *Kane*, 2024 WL 1178340, at *8. Plaintiff makes those allegations here.

When offering its insurance services for sale, DDNY promises to treat PHI confidentially under the terms of its HIPAA Notice of Privacy Practices ("HIPAA Notice"). ECF 19, ¶ 79. The HIPAA Notice states that DDNY: (a) is "required by law to maintain the privacy and security of your [PHI]"; (b) may use and disclose PHI "for treatment, payment or healthcare operations" and (c) "will obtain your authorization for the use or disclosure of PHI for marketing when required by law." *Id.* Those promises are part of the agreement between DDNY and its plan members and form an essential part of the bargain when an individual agrees to purchase insurance from DDNY. Plaintiff alleges that she purchased DDNY insurance, that, "[a]s a condition of using Defendant's services, [she] disclosed her [PHI] to Defendant" through DDNY's plan-member portal, and that she "trusted that the information would safeguarded according to Defendant's policies." *Id.* ¶¶ 135, 137, 145; *see also* ECF 29 at 13 (DDNY acknowledging that Plaintiff alleges she "relied on Defendant's HIPAA Notice").

Plaintiff performed her end of the bargain. *Id.* ¶ 166. DDNY did not. *Id.* ¶ 83. Rather, in a breach of the term requiring DDNY to "obtain [Plaintiff's] authorization for the use or disclosure of PHI for marketing," DDNY disclosed Plaintiff's PHI for marketing without Plaintiff's consent. *Id.* ¶¶ 79, 83. That is a material breach of the parties' agreement.

DDNY argues that Plaintiff did not sufficiently identify the contract or terms at issue because Plaintiff alleges the contractual promises exist in the HIPAA Notice "and elsewhere." ECF 29 at 11-12 (citing ECF 19, ¶ 165). The Complaint, however, repeatedly identifies the HIPAA Notice as the agreement at issue and quotes the exact terms DDNY breached. ECF 19, ¶¶ 79-80 (agreement and terms); *see also id.* ¶ 83 (Defendant "violated [the] HIPPA Notice … by unlawfully

intercepting and disclosing Plaintiff's … [PHI]"); *id.* ¶ 152(c) (common issues of fact include "[w]hether Defendant violated [the] HIPAA Notice … by disclosing the PII and PHI of [plan members]"). The reason paragraph 165 of the Complaint (which DDNY relies on in support of this argument) says "and elsewhere" is because DDNY incorporated the HIPAA Notice by reference into other documents provided to Plaintiff, including, for example, the Website Privacy and Security Policy ("Website Privacy Policy") that DDNY attached to its motion to dismiss. ECF 30-1 at 2 (Website Privacy Policy stating that "To understand how your [PHI] may be used and disclosed … see our HIPAA Notice of Privacy Practices"). Notably, DDNY argues in its brief that Plaintiff "relied upon and agreed to" the Website Privacy Policy too, and that the terms of the Website Privacy Policy form part of DDNY's "contract" with Plaintiff. ECF 29 at 14. There can thus be no question that there was an agreement between Plaintiff and DDNY, that the terms of the HIPAA Notice were part of that agreement, and that the Complaint put DDNY on notice of the agreement and terms at issue.

In that regard, Plaintiff's contract claim is indistinguishable from the contract claim in *Kane*, which DDNY cites in its brief. ECF 29 at 15, 17, and 23 (citing *Kane*, 2024 WL 1178340). In *Kane*, the plaintiff alleged that the defendant's HIPAA notice and website privacy policy promised not to disclose PHI without consent. *Kane*, 2024 WL 1178340, at *3 (referring to both documents collectively as the "Privacy Policies"). The defendant argued that these documents were "simply a notice to patients" and could not form the basis of a binding agreement. *Id.* at *8. The court rejected that argument because, as Plaintiff alleges here, the plaintiff provided information and money as consideration for the defendant's services, and the HIPAA notice and website privacy policy were part of the terms of that bargain. *Id.* at *8-9.

This case is thus very much unlike DDNY's case, *Yanes*. ECF 29 at 11 (citing *Yanes v. Ocwen Loan Servicing, LLC*, 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015)). There, the complaint made only a general reference to a "modification application package." *Id*. Here, in contrast, the Complaint repeatedly references the specific agreement at issue and quotes the exact terms that were breached. ECF 19, ¶¶ 79-80, 83, 152. The fact that DDNY incorporated the HIPPA Notice into the Website Privacy Policy (*i.e.*, made the same representations "elsewhere") does not, as in *Yanes*, deprive Defendant of notice of the agreement and terms at issue.

DDNY argues that the Complaint fails to allege the "*specific* contractual provisions breached or how they were breached." ECF 29 at 12 (emphasis in original). DDNY's argument is based on several paragraphs in the count for breach of contract at the end of the Complaint. *Id.* (citing paragraphs 165, 167 and 169 of the Complaint). But, as is customary in pleading, the breach of contract count incorporates the factual allegations from the body of the Complaint by reference. ECF 19, ¶ 162. And those allegations identify the specific terms at issue and explain how DDNY breached them. ECF 19 ¶¶ 79-83.

DDNY argues that there was no breach because the contract between DDNY and Plaintiff included *both* the HIPAA Notice and the Website Privacy Policy, and the latter, DDNY argues, "***explicitly*** discusses working with third parties to collect user data via web technologies for marketing purposes." ECF 29 at 13-14 (emphasis in original). Thus, as DDNY sees it, there are two relevant terms that must be read together to understand the entire agreement between the parties: (1) the statement in the Website Privacy Policy that "We work with companies that collect information about your online activities to provide advertising targeted to suit your interests and preferences" (ECF 29 at 14 (citing ECF 30-1 at 5)); and (2) the statement in the HIPPA Notice that DDNY "will obtain your authorization for the use or disclosure of PHI for marketing when

required by law" (ECF 19, ¶ 79). *See* ECF 29 at 14 (arguing that Plaintiff's focus on the HIPPA Notice is wrong because Plaintiff cannot "pick and choose the terms of the contract … she wants to enforce and claim ignorance of the rest."). Thus, there is a general disclosure around the existence of online tracking technology, and a specific representation that PHI, in particular, will not be disclosed for marketing without authorization. No reasonable person would read those two statements together as allowing DDNY to disclosure PHI for marketing purposes without consent via online tracking technologies. *See In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel Healthcare*"), 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (declining to find consent because the policies "do not [] specifically indicate that Meta may acquire *[the sensitive] data* [at issue] obtained from Facebook users' interactions . . . . Its generalized notice is not sufficient to establish consent.") (emphasis in original); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) (declining to find consent where "[t]hose more specific disclosures and assertions indicate that Favor would not disclose (or sell or use for marketing) users' personal information."). And even if there were any ambiguity on that issue (and there is not), it would not be appropriate to resolve that ambiguity in DDNY's favor on a motion to dismiss. *See*, *e.g.*, *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. 2024) ("Whether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023) (declining to decide consent at Rule 12); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *3 (S.D. Cal. 2024) (similar).

Finally, DDNY argues that "Plaintiff fails to allege any damages caused by a breach." ECF 29 at 12-13. That is not accurate. The Complaint alleges, in detail, that the data DDNY disclosed

has economic value and that DDNY did not compensate Plaintiff for taking it. *Id.* ¶¶ 122-134, 182. In the process, DDNY deprived Plaintiff of the benefit of her bargain with DDNY, which included health insurance at a fixed cost *without* the additional consideration of providing her PHI free of charge to facilitate DDNY's marketing. *Id.* ¶¶ 20, 144. The exact amount of Plaintiff's damages will be determined later in the litigation. *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *5 (E.D. Pa. Sept. 30, 2024) (rejecting similar damages argument where "Plaintiffs allege that they have suffered damages for several reasons, including in particular damages occurring from the loss of value of Plaintiffs' [PHI]. Several courts have recognized the property value of personal information. The actual value of the damages is not for the Court to determine at a motion to dismiss stage."). And even if Plaintiff did not allege either of those economic injuries (and she does), she could nevertheless seek to redress the privacy injury caused by DDNY's breach through the recovery of nominal damages. *Id.* ¶ 168.

**2. Breach of Implied Contract**

If the fact finder determines that there was no *express* contract between DDNY and Plaintiff (as DDNY at times suggests in its brief), then Plaintiff can proceed on an implied contract theory in the alternative. *See* Fed. R. Civ. P. 8(a)(3) and 8(d)(2). "[A] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 506–07 (2d Cir. 2009)). Indeed, DDNY's *Wallace* case sustained breach of implied contract because "[t]he terms of the [HIPAA] Notice of Privacy Practices, along with the notices defendant posted on its website, support an inference that [the defendant] intended to be bound by its obligation to safeguard plaintiffs' Private Information." 2021 WL 1109727, at *10.

In the event the fact finder determines that there was no express contract, the same inference would be applicable here.[2]

### B. Plaintiff States a Claim for Breach of Fiduciary Duty and Breach of Confidence[3]

To state a claim for breach of confidence under New York law, "a plaintiff must plead: (i) the defendant assumed a duty of confidentiality, (ii) the defendant intentionally, knowingly, or negligently breached that duty, and (iii) the plaintiff was damaged as a result of that breach." *Wallace*, 2021 WL 1109727, at *12. Under New York law, an insurance company has a duty "to safeguard . . . clients' personal and confidential information." *Daly v. Metro. Life Ins. Co.*, 4 Misc. 3d 887, 892 (Sup. Ct. N.Y. Cty. 2004); *cf. Jones v. Com. Bancorp, Inc.*, 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006) (duty of confidentiality existed where the "plaintiff was required to provide certain information . . . to open her account, and [the bank] represented that it would safeguard that information"). Here, DDNY assumed a duty of confidentiality for the same reason as in *Daly* and *Jones*. Plaintiff alleges she is a DDNY plan member who provided her PHI to DDNY. ECF 19, ¶¶ 23, 135-145. DDNY promised to keep Plaintiff's PHI confidential and indeed had a legal duty to do so under HIPAA. *E.g.*, ECF 19, ¶¶ 12-15, 68, 79-105 (describing DDNY's obligations under HIPAA). DDNY breached that duty when it disclosed Plaintiff's confidential

---

[2] Plaintiff recognizes that *Kane* dismissed breach of implied contract, after sustaining express contract, on the grounds that in its view, caselaw favors breach of confidence as the appropriate theory to pursue against healthcare providers for disclosure of PHI under New York law. *Kane* also rejected the breach of confidence claim on the grounds that the plaintiff failed to adequately allege a duty to keep the information in confidence because, unlike here, the data was not collected from *within* the patient portal. Thus, Plaintiff's breach of confidence claim should survive here. As to implied contract, however, none of the cases that the *Kane* court reviewed considered whether disclosure of PHI was a breach of a contractual HIPAA notice as here. Respectfully, on this point, the *Kane* court's conclusion that disclosure of PHI is always a claim that sounds in tort was not merited by the caselaw it reviewed.

[3] DDNY agrees that New York courts analyze breach of confidence and breach of fiduciary duty together. *See* ECF 29 at 15, 17 (analyzing claims together and arguing that "a claim for breach of an assumed duty of confidentiality is essentially duplicative of a claim for breach of fiduciary duty").

information to third parties without her consent. *Id.* These allegations state the claims at issue. *Gay v. Garnet Health*, 2024 WL 4203263, at *5 (S.D.N.Y. Sept. 16, 2024) (sustaining breach of confidentiality and fiduciary duty claim where the plaintiffs alleged they "are patients of the Defendant," "Defendant acquired [their PHI]," Plaintiffs' PHI was "transmitted to a party not connected to Plaintiffs' medical treatment" via online tracking technology, and "Plaintiffs did not consent to this disclosure"); *see also Cooper*, 2024 WL 3586357 at *12 (sustaining breach of confidence claim based on disclosure of PHI via website tracking technology).

DDNY argues that the only duty insurers owe to their insureds is the duty to defend against litigation. ECF 29 at 15. That assertion cannot be squared with *Daly*, which held that an insurance company has a duty "to safeguard . . . clients' personal and confidential information." *Daly*, 4 Misc. 3d at 892. DDNY's argument is also in tension with the Second Circuit's decision in *Young*, which noted that "[t]he breach-of-confidence theory may be applicable to a wide spectrum of associations." *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 640-41 (2d Cir. 1989).

DDNY also suggests that a breach of confidence claim is duplicative of a claim for breach of fiduciary duty. ECF 29 at 17. That argument is hard to square with: (a) DDNY's assertions that an insurer owes no fiduciary duties to its insureds; and (b) *Daly*'s holding that insurers owe a duty of confidentiality to its insureds. If the duties are different, then the claims are necessarily not duplicative. DDNY cites *Kane* in support of its "duplicative" argument. ECF 29 at 17 (citing *Kane*, 2024 WL 1178340, at *14). But *Kane* dismissed the breach of confidence and breach of fiduciary duty claims because, unlike here, the information disclosed via the online tracking technology was not disclosed from *within* the relevant healthcare portal. 2024 WL 1178340, at *14 (noting that "it is conceivable that the [tracking technology] transmits information within the scope of Defendant's duty of confidentiality").

### C. Plaintiff States a Claim for Unjust Enrichment

DDNY contends that Plaintiff's unjust enrichment claim should be dismissed because it is duplicative of her contract and tort claims. ECF 29 at 18-20. "This is a losing argument. It is black letter law that a complaint ***may*** plead in the alternative … [and] legal allegations—*e.g.*, whether that agreement amounted to a 'contract'—may be pled in the alternative. Indeed, legal theories may be pled in the alternative even if the alternatives are wholly contradictory." *Astroworks, Inc. v. Astroexhibit, Inc*., 257 F. Supp. 2d 609, 621 n.10 (S.D.N.Y. 2003) (emphasis in original); *see also Kane*, 2024 WL 1178340, at *16 (alternative pleading where "Defendant disputes whether a contract exists"); *Wallace*, 2021 WL 1109727, at *11 (similar). Plaintiff's contract and other legal claims have different elements than her claim for unjust enrichment and may ultimately fail while Plaintiff's unjust enrichment claim may not. Plaintiff is entitled to plead claims in the alternative. Fed. R. Civ. P. 8(a)(3) and 8(d)(2). If DDNY is ultimately successful in proving that no contract between DDNY and Plaintiff existed, Plaintiff will seek recovery under her alternative unjust enrichment theory.

### D. Plaintiff States a Claim for Bailment

Under New York law, a bailment is the "delivery of personal property for some particular purpose ... upon a contract express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it." *Kane*, 2024 WL 1178340, at *11. *Kane* recognized that a constructive bailment "aris[es] out of Defendant's possession and control of Plaintiff['s] and Class Members' Private Information." *Id.* (cleaned up); ECF 19, ¶¶ 202-210. The same finding is merited here.

DDNY argues that because the data at issue was *intercepted* by the Tracking Technology Vendors, that property was necessarily not delivered to DDNY. ECF 29 at 19-20. But the communications at issue were controlled by DDNY and *directed* to DDNY via its plan-member

portal, and there is a natural inference, that must be drawn in Plaintiff's favor, that DDNY received the communications sent to it by plan members through the plan-member portal. *Cf. Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (observing that plaintiff "lacks the direct access to what occurs in the background on [the defendant's] web properties"). True, the tracking technology DDNY installed on its portal allowed the Tracking Technology Vendors to intercept those communications for their own use (also through DDNY's control and direction). But that does not mean that DDNY never received the communications Plaintiff sent to it through the portal.

### E. Plaintiff States a Claim under New York GBL § 349

A plaintiff states a claim for violation of N.Y. Gen. Bus. Law § 349 ("GBL § 349") by alleging "that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744-45 (1995). Plaintiff may pursue either an affirmative misrepresentations or omissions theory under the GBL. Material deception under § 349 is reviewed under an objective standard that looks to whether the conduct is "likely to mislead a reasonable consumer acting reasonably under the circumstances," *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (2000) (citation omitted), and deceptive omissions occur when the defendant "possesses material information that is relevant to the consumer and fails to provide [the] information." *Oswego*, 647 N.E.2d at 745. Because "the question of what might deceive the reasonable consumer is a question of fact," it is "rare" for the court to dismiss a GBL § 349 claim at the pleading stage. *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14, *16 (S.D.N.Y. Aug. 12, 2016); *see, e.g.*, *Brady v. Anker Innovations Ltd.*, 2020 WL 158760, at *9 (S.D.N.Y. Jan. 13, 2020) (same).

DDNY argues that Plaintiff "does not allege any actual misrepresentations she relied upon." ECF 29 at 20. But New York and federal courts have "repeatedly" emphasized that "reliance is not an element of a section 349 claim." *Stutman*, 731 N.E.2d at 612; *see also Eidelman v. Sun Prods. Corp.*, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022) ("[R]eliance is *not* an element of a section 349 claim.") (emphasis in original); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (§ 349 claim "does not require proof of the same essential elements (such as reliance) as common-law fraud" and is "not subject to the pleading-with- particularity requirements of Rule 9(b)"). Rather, a plaintiff may allege either that the defendant "engaged in a deceptive practice that affected the consuming public," *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *8 (S.D.N.Y. Aug. 17, 2011), or that the plaintiff was "exposed" to the deception, *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 267 (E.D.N.Y. 2019); *see also Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 435 (S.D.N.Y. 2020) (sufficient that "disclosures [plaintiff] received were inadequate, misleading, or false, and that she was injured as a result").

Plaintiff alleges both here. First, DDNY was engaged in a deceptive practice that affected the consuming public because it told plan members in its HIPPA Notice that it would use PHI "for treatment, payment or healthcare operations," and would *not* use or disclose PHI for marketing without "obtain[ing] your authorization," but nevertheless installed tracking technology on its portal that disclosed plan-member PHI for marketing without consent. *E.g.*, ECF 19, ¶¶ 79-83. Second, Plaintiff was exposed to those promises and "trusted that [her PHI] would be safeguarded according to Defendant's policies." *Id.* ¶ 137. Indeed, there is a reasonable inference that *all* plan-members were exposed to DDNY's HIPAA Notice because federal law requires DDNY to provide that document to plan members, and the HIPPA Notice itself says it was provided to every plan member. HIPAA Notice (acknowledging "We must follow the federal and state privacy

requirements described that apply to our administration of your benefits and provide you with a copy of this notice"), available at: https://www1.deltadentalins.com/about/legal/privacy/hipaa-privacy.html (last accessed April 18, 2025).

Even assuming, for the sake of the argument, that reliance was an element of a claim under GBL § 349 (and it is not), DDNY's argument would nevertheless fail. DDNY repeatedly acknowledges in its brief that Plaintiff alleges "she relied on Defendant's HIPAA Notice *and* the Website Privacy and Security Policy." ECF 29 at 13-14 (emphasis in original). DDNY cannot acknowledge on pages 13 and 14 of its brief that Plaintiff pleads reliance on the agreements at issue, and then argue on page 20 that Plaintiff does not allege reliance. Moreover, as in *Kane*, the Complaint "describe[s] the relevant provisions of Defendant's Privacy Policies in detail, and state[d] that [plaintiff] trusted that the Private Information that [she] provided to Defendant would be 'safeguarded according to Defendant's policies and state and federal law.' The reasonable inference is that Plaintiff[] saw the Privacy Policies and [was] deceived into providing [her] Personal Information to Defendant." *Kane*, 2024 WL 1178340, at *18; ECF 19 ¶¶ 79-83, 137.

DDNY also argues that Plaintiff fails "to allege that she suffered actual injury as a result of her [PHI] being collected and used for marketing purposes." ECF 29 at 20-21. That is not accurate. A plaintiff is injured under the GBL if she was "depriv[ed] of the right to maintain the privacy" of her PHI. *Myerson v. Prime Realty Servs., LLC*, 796 N.Y.S.2d 848, 856 (Sup. Ct. 2005) (§ 349 injury includes "deprivation of the right to maintain the privacy of medical records"); *see also Anonymous v. CVS Corporation*, 728 N.Y.S.2d 333, 340 (Sup. Ct. 2001) (loss of privacy in one's health information is actual § 349 injury, particularly where the plaintiff was deprived of "right to take action to prevent or minimize the disclosure of his medical information"); *Bose*, 2011 WL 4343517, at *9 ("[C]ourts have recognized similar privacy violations as injuries for purposes

of Section 349."). Moreover, the Complaint also alleges the economic injuries discussed at length above—that is, Plaintiff allege that the data had value, that DDNY used and disclosed it for marketing purposes without compensating Plaintiff, and that, as a result, Plaintiff did not receive the benefit of her bargain with DDNY.

### F. Plaintiff States a Claim under ECPA, 18 USC 2511(1)

DDNY contends that it cannot be liable under the ECPA because (a) Plaintiff consented to the disclosure and (b) DDNY consented to the disclosure. ECF 29 at 21-24.

The former assertion is directly contrary to the allegations in Complaint, which must be accepted as true at the pleading stage and which repeatedly state that Plaintiff did not consent to the disclosures at issue. *E.g.*, ECF 19, ¶¶ 23, 33, 35, 76-77, 83, 139, 142-143. DDNY's argument that Plaintiff consented is also premature, as consent is fact-intensive issue inappropriate for resolution at Rule 12. *See* Section II(A)(1), *supra*. Even if the issue were ripe for resolution, DDNY's argument would nevertheless fail on the merits. According to DDNY, Plaintiff consented to the disclosure of her PHI by agreeing to the Website Privacy Policy, which states that DDNY "work[s] with companies that collect information about your online activities to provide advertising targeted to suit your interests and preferences." ECF 29 at 14 (citing ECF 30-1 at 5). That statement says nothing about whether DDNY collects and discloses *plan-member PHI*, and thus cannot possibly be the basis for informed consent on that issue. Rather, the use of PHI is controlled by the HIPAA Notice (which is incorporated by reference into the Website Privacy Policy), and the HIPAA Notice clearly states that DDNY "will obtain your authorization for the use or disclosure of PHI for marketing." ECF 19, ¶ 79. No reasonable person would read that document as saying that DDNY had *already* obtained consent to disclose plan-member PHI to third-party marketing companies based on a general description of cookies in the Website Privacy Policy.

Accordingly, DDNY was the only party to the communications that consented to the disclosures at issue. Where only one party consented, ECPA claims can proceed where the allegations in the complaint satisfy the so-called crime-tort exception. *Gay*, 2024 WL 4203263, at *2; *see also* ECF 29 at 22 (DDNY recognizing the crime-tort exception). The crime-tort exception is satisfied where the allegations "support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent from the intentional act of recording." *Gay*, 2024 WL 4203263, at *2.

The Complaint supports such an inference here. HIPAA makes it a criminal violation to disclose PHI to another person without the patient's consent. *See id.*, at *3 (citing 42 U.S.C. § 1320d-6). "Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA." *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *5 (N.D. Ill. Feb. 21, 2025). For example, in *Gay*, the plaintiff alleged that the defendant used website tracking technology to "transmit Plaintiffs' PHI and PII without Plaintiffs' consent for commercial purposes." *Gay*, 2024 WL 4203263, at *3. Like DDNY, the defendant argued that it consented to the disclosures at issue. *Id.* at *2-3. Applying the crime-tort exception, the court rejected the defendant's consent argument because "[t]he Complaint alleges that Defendant's use of [the tracking technology at issue] was to track and utilize Plaintiffs' and Class Members PHI and PII for financial gain, in violation of applicable laws such as HIPAA." *Id.* at *3 (internal quotations omitted). Other courts in this District and around the country are in accord that alleged HIPAA violations are sufficient to plead the crime-tort exception. *E.g.*, *Kane*, 2024 WL 1178340, at *7 ("This Court likewise concludes that Plaintiffs can invoke the tort-crime exception. Plaintiffs have alleged that Defendant configured the Pixel to collect and disclose, among other things, that a specific user booked an appointment with a specific healthcare provider and the search terms

that the user entered to find that provider.... They have further alleged that Defendant disclosed this information to enhance its marketing efforts."); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023); *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *5 (D. Ariz. Jan. 28, 2025); *Castillo v. CostCo Wholesale Corp.*, 2024 WL 4785136, at *7 (W.D. Wash. 2024); *Gay*, 2024 WL 4203263, at *3–4; *Sweat v. Houston Methodist Hosp.*, 2024 WL 3070184, at *4 (S.D. Tex. 2024)).

The crime-tort exception applies here for the same reason it did in *Gay*. The Complaint alleges that the disclosure of Plaintiff's and class members' PHI through the tracking technology at issue violated HIPAA. *E.g.*, ECF 19, ¶¶ 13-14, 84-105. DDNY transmitted the data at issue so that it could be used by the Tracking Technology Vendors for targeted advertising and marketing purposes, and, ultimately, DDNY's financial gain. *E.g.*, *id.* ¶¶ 7, 11, 48, 117, 244. *Gay* and the other cases cited above make clear that disclosure of PHI in violation of HIPAA for marketing and financial gain is sufficient to allege the crime-tort exception at the pleading stage.

DDNY argues that the crime-tort exception does not apply because DDNY was "motivate[d]" to install the tracking technologies for financial gain, and financial gain is not a criminal purpose. ECF 29 at 23. DDNY relies on *Cooper*, *Gay*, and *Kane* in support of this argument (*id.*), but those cases directly undermine DDNY's position. In particular, those cases found that the crime-tort exception applied where the defendant violated HIPAA *for commercial purposes*. *Cooper*, 742 F. Supp. 3d at 381–82 (finding that the crime-tort exception applied where the allegations "plausibly support the inference that [the defendant], *for commercial ends*, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain") (emphasis added); *Gay*, 2024 WL 4203263, at *3

("Where Defendant's conduct became problematic is where it intended to transmit Plaintiffs' PHI and PII without Plaintiffs' consent *for commercial purposes*.") (emphasis added); *Kane*, 2024 WL 1178340, at *7 ("Plaintiffs have plausibly alleged that Defendant's purpose was to commit an act that is punishable as a crime under 42 U.S.C. § 1320d-6: knowingly disclosing IIHI without authorization *for marketing purposes*.") (emphasis added). And federal courts around the country have likewise held that a financial motivation does not undermine the application of the crime-tort exception. *E.g.*, *Sussman v. Am. Broadcasting Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("[T]he existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose."); *Stein*, 2025 WL 580556, at *5 ("The language of the [ECPA] gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations."); *Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 WL 963779, at *5 (N.D. Ill. Mar. 31, 2025) ("When statutes speak in terms of an illicit 'purpose,' the fact that there may also have been some legitimate reason motivating the defendant's conduct does 'not sanitize the illegitimate one.'"). Moreover, courts have also held that the defendant's motivation, for purposes of the crime-tort exception, is a fact issue inappropriate for resolution at Rule 12. *See, e.g.*, *In re Meta Pixel Healthcare*, 647 F. Supp. 3d at 797 ("There is a not-insignificant chance, then, that plaintiffs may be able to show that the crime-tort exception applies.") (citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (noting that fact questions existed regarding Meta's intent); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 720 ("[D]etermination of HealthPartners' actual purpose for installing and using the Pixel Code requires a factual undertaking.").

Finally, DDNY relies on *Okash* for the proposition that the crime-tort must be "independent" of "the act of interception itself." ECF 29 at 23 (citing *Okash v. Essentia Health*,

2024 WL 1285779, at *4-5 (D. Minn. Mar. 26, 2024)). DDNY appears to be asserting that the defendant must intercept the communication at one time, and then *later* use the information to commit a crime or tort. But if that were the rule, then *Cooper*, *Gay*, and *Kane* would have all come out the other way, as the HIPAA violations at issue there occurred *at the time the communications were intercepted*. True, the crime-tort at issue must be something independent of the underlying ECPA violation. *See Stein*, 2025 WL 580556, at *4-5 (noting that "[t]here is no double dipping," as "the conduct must violate something else for the crime-tort exception to apply"). But that does not mean that the crime-tort must occur at a later point in time.

In that regard, *Okash* is an out-of-Circuit case that adopts the minority view on this issue. *See K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) (describing split, and agreeing with majority view "that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception"). The *Okash* court did not evaluate the numerous in-District cases cited herein that take a contrary position. Indeed, *Okash* isn't even the prevailing view in its own district. *Compare Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *4-5 (D. Minn. Mar. 28, 2024) *with Okash*, 2024 WL 1285779 *4-5.

## CONCLUSION

For the foregoing reasons, DDNY's motion to dismiss should be denied in its entirety. To the extent the Court grants any portion of DDNY's motion, Plaintiff requests leave to amend to address any curable deficiencies.

Dated: April 18, 2025

DWOSKIN WASDIN LLP

s/ *Eric S. Dwoskin*
Eric S. Dwoskin
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Tel.: (561) 849-8060
edwoskin@dwowas.com

*Attorney for Plaintiff and the putative Class*

**LOCAL RULE 7.1 CERTIFICATE**

I hereby certify that this opposition brief complies with the 8,750 word-count limitation in Local Rule 7.1. I relied on the word count function of Microsoft Word to determine the word count, which counted 8,026 words in this opposition brief, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

/s/ *Eric S. Dwoskin*
Eric S. Dwoskin

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list.

/s/ *Eric S. Dwoskin*
Eric S. Dwoskin