**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICIA CAVALLARO-KEARINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA DENTAL OF NEW YORK, INC.,<br><br>Defendant. | Case No. 7:24-CV-06946-CS |

**DEFENDANT DELTA DENTAL OF NEW YORK, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....1
II. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE INJURIES-IN-FACT SUFFICIENT TO PURSUE HER CLAIMS ....1
III. PLAINTIFF FAILS TO REFUTE DEFENDANT'S ARGUMENTS AS TO EACH CLAIM IN THE COMPLAINT ....3
A. Plaintiff Fails to Plead a Claim for Breach of Contract of Breach of Implied Contract ....3
B. Plaintiff Fails to Plead a Claim for Breach of Fiduciary Duty or Breach of Confidence ....4
C. Plaintiff Fails to Plead a Claim for Unjust Enrichment ....6
D. Plaintiff Fails to Plead a Claim for Bailment....7
E. Plaintiff Fails to Plead a Claim Under New York GBL § 349 ....7
F. Plaintiff Fails to Plead a Claim for Violation of the Federal Wiretap Act ....8
IV. CONCLUSION....10
CERTIFICATE OF COMPLIANCE....11

TABLE OF AUTHORITIES

Page(s)

Cases

*Addi v. Int'l Bus. Machines, Inc.*
No. 23 CIV. 5203 (NSR), 2024 WL 2802863 (S.D.N.Y. May 31, 2024) ................................7

*Cantinieri v. Verisk Analytics, Inc.*
No. 2:21-CV-6911 (NJC) (JMW), 2024 WL 5202579 (E.D.N.Y. Dec. 23, 2024)...................2

*Caro v. Weintraub*
618 F.3d 94 (2d Cir. 2010)..........................................................................................9

*Cooper v. Mount Sinai Health Sys., Inc.*
742 F. Supp. 3d 369 (S.D.N.Y. 2024)...........................................................................5, 9

*Daly v. Metro. Life Ins. Co.*
4 Misc. 3d 887 (Sup. Ct. 2004)....................................................................................4, 5, 6

*Gasery v. Kalakuta Sunrise*
LLC, 422 F. Supp. 3d 807 (S.D.N.Y. 2019)........................................................................5

*Gay v. Garnet Health*
No. 23-CV-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)...........................5, 7

*Heeger v. Facebook, Inc.*
509 F. Supp. 3d 1182 (N.D. Cal. 2020)..............................................................................2

*Jones v. Com. Bancorp, Inc.*
No. 06 CIV. 835 (HB), 2006 WL 1409492 (S.D.N.Y. May 23, 2006)...............................4, 5

*Kane v. Univ. of Rochester*
Case No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19 2024)............................6

*Kwok Sze v. Pui-Ling Pang*
No. 15-CV-447 CS, 2015 WL 6867134 (S.D.N.Y. Nov. 9, 2015).........................................8

*Lakes v. Ubisoft*
No. 24-CV-06943-TLT, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025)....................................8

*Liau v. Weee! Inc.*
No. 23 Civ. 1177 (PAE), 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024)...................................2

*Salazar v. Nat'l Basketball Ass'n*
118 F.4th 533 (2d Cir. 2024)......................................................................................1, 2, 3

*Xu v. Reuters News & Media Inc.*
No. 24 CIV. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)...................................2

*Yanes v. Ocwen Loan Servicing, LLC*
No. 13-CV-2343 JS ARL, 2015 WL 631962 (E.D.N.Y. Feb. 12, 2015)....................................4

*Young v. U.S. Dep't of Just.*
882 F.2d 633 (2d Cir. 1989)....................................6

*Yuille v. Uphold HQ Inc.*
686 F. Supp. 3d 323 (S.D.N.Y. 2023)....................................8

## I. INTRODUCTION

Plaintiff's Opposition only further highlights the flaws in her Second Amended Complaint ("SAC") (Dkt. 19). Rather than trying to *substantively* demonstrate that the SAC has pleaded injuries-in-fact sufficient to confer standing under prevailing law, Plaintiff's standing argument rests on authority that runs directly contrary to Second Circuit precedent and hinges on a single, unsupported theory of injury. As such, Plaintiff's Opposition fails to successfully establish that Plaintiff has standing to pursue her claims. Like her arguments regarding standing, Plaintiff's arguments with respect to her individual claims fair no better. Tellingly, the Opposition spends much time discussing case law relevant to her claims, but little time discussing the *specific allegations as to Plaintiff* in the SAC. This is ultimately why the SAC fails—it simply reflects a list of vaguely pleaded conclusory statements that do not describe alleged *facts* that provide legal basis upon which Plaintiff can proceed with her claims. The Opposition cannot explain this flaw away. As a result, Plaintiff's SAC fails to state any claim for relief and should be dismissed.

## II. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE INJURIES-IN-FACT SUFFICIENT TO PURSUE HER CLAIMS

Instead of addressing the laundry list of purported injuries alleged in the SAC, and challenged in the Motion, Plaintiff argues that her allegation regarding disclosure of private information is an injury sufficient to demonstrate she has standing to bring this suit. In support, Plaintiff attempts to equate her allegations to those in *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 538 (2d Cir. 2024). That case is distinguishable. In *Salazar*, the plaintiff alleged that the National Basketball Association ("NBA"), *without providing him prior notice*, disclosed information related to him, including the particular content he had accessed on the NBA's website, to a third party, which allowed the third party to specifically identify him. *Id.* at 538. The court ruled that the disclosure of Salazar's personally identifiable viewing information amounted to the public disclosure of private facts. *Id.* at 541–44. But different from *Salazar* is the fact that here Defendant actually disclosed its collection and use of data. The relevant Website Privacy and Security Policy ("Privacy Notice") states "***[w]e work with companies that***

***collect information about your online activities to provide advertising targeted to suit your interests and preferences***. […] These companies also use automated technologies to collect information when you click on our ads, which helps track and manage the effectiveness of our marketing efforts." Dkt. 30-1 (emphasis added). Thus, Plaintiff was aware that information related to her online activities could be disclosed to and used by third parties. SAC ¶ 219. She cannot now claim she was harmed by the disclosure of information she knew would be disclosed—and as a result she has standing to bring a suit in this Court. Also distinguishing is the fact that Plaintiff fails to allege exactly which ***private*** information of *hers* was *actually* disclosed. The SAC contains general statements regarding non-sensitive information that could be collected but not what *sensitive* information tied to Plaintiff was actually collected and disclosed. *See e.g.*, SAC ¶¶ 6, 55-61, 66. Again, the primary failure of the SAC is it is pleaded in vague and conclusory terms.

In addition to these distinguishing facts, *Salazar* is an outlier. It runs contrary to the plethora of authority, predating and postdating the decision both within the Second Circuit and beyond, that stands for the premise that disclosure of information alone does not create standing. *See e.g., Cantinieri v. Verisk Analytics, Inc.*, No. 2:21-CV-6911 (NJC) (JMW), 2024 WL 5202579 at *1 (E.D.N.Y. Dec. 23, 2024) ("the mere disclosure of the plaintiff's PII to an unauthorized actor [does] not, standing alone, establish the injury in fact required for Article III standing to bring claims targeting the defendants' disclosure of [plaintiff's] PII."); *Xu v. Reuters News & Media Inc.*, No. 24 CIV. 2466 (PAE), 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) ("the Complaint does not allege that Xu received any targeted advertising or was otherwise affected, much less that Xu was concretely harmed by any such advertising."); *Liau v. Weee! Inc.*, No. 23 Civ. 1177 (PAE), 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (data leak of "relatively quotidian *private* information"—"customers' names, email addresses, and phone numbers, but not payment data or passwords"—did not give rise to a concrete harm (emphasis added); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1188, 1189–91 (N.D. Cal. 2020) (no injury in fact based on collection of "IP addresses showing locations where [plaintiff] accessed

his Facebook account"). Accordingly, the Court need not follow *Salazar* and instead should look favorably at the line of authority before and after *Salazar*—especially here where the defendant has suffered no actual harm or monetary loss and does not allege they are at a risk for identity theft.

Finally, the Opposition only makes a substantive argument regarding Plaintiff's "disclosure of private information" theory of harm for standing purposes. The Motion argues that each of Plaintiff's other theories of harm (SAC ¶¶ 20, 144) are insufficient to confer standing. Plaintiff fails to address Defendant's arguments as to these additional theories head-on and tellingly asserts that "[b]ecause *Salazar* is sufficient to establish standing here, Plaintiff does not need to address standing based on another theory[.]" Opp. (Dkt. 31) at 4, n.1.[1] This should be construed as a concession by Plaintiff. As a result, in addition to rejecting the disclosure of private information theory of harm, Defendant respectfully requests that the Court rule that Plaintiff may not base its standing to maintain this suit on any of these additional theories. *See* Motion (Dkt. 29) at 4-10. (discussing Plaintiff's lack of standing as to each alleged harm).

## III. PLAINTIFF FAILS TO REFUTE DEFENDANT'S ARGUMENTS AS TO EACH CLAIM IN THE COMPLAINT

### A. Plaintiff Fails to Plead a Claim for Breach of Contract of Breach of Implied Contract

Plaintiff argues that the agreement at issue is the HIPAA Notice of Privacy Practices ("HIPAA Notice"). But the SAC does not clearly allege this. Instead of pleading a specific contract at issue, Plaintiff vaguely alleges that she "and Class Members *entered into contracts* with Defendant by which Defendant agreed to safeguard and protect [their] information, in its HIPAA Notice of Privacy Practices and *elsewhere*, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen." SAC ¶ 165 (emphasis added). Accordingly,

[1] Plaintiff only briefly states that "the economic injury caused by DDNY taking the valuable data without compensation" (Opp. at 4, n.1) and cites two cases from outside of the Second Circuit without addressing any of the in-circuit authority on this issue cited in the Motion. *See* Motion at 5-7.

Plaintiff ignores that her SAC does not allege the contracts at issue, but merely that they included data protection obligations from the HIPAA Notice and *from some other unspecified item(s)*. The Opposition attempts to explain the "elsewhere" term away by stating that "[t]he reason paragraph 165 of the Complaint […] says 'and elsewhere' is because DDNY incorporated the HIPAA Notice by reference into other documents provided to Plaintiff, including, for example, the Website Privacy and Security Policy ('Website Privacy Policy') that DDNY attached to its motion to dismiss." Opp. at 10. But the SAC does not state these specific documents were a part of the contracts allegedly breached and Plaintiff's argument highlights a fundamental issue with this claim; Plaintiff needs to elaborate each and every document that falls under the term "elsewhere" so Defendant may know the extent of the "contracts" she and Defendant allegedly entered into. *See* SAC ¶ 165; *see also* Motion at 11; *Yanes v. Ocwen Loan Servicing, LLC*, No. 13-CV-2343 JS ARL, 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015) ("Without pleading the terms of the contract or contracts that [plaintiff] relies upon, [their] claim fails."). Furthermore, if the HIPAA Notice is the only agreement that applies to this claim, the operative complaint must clearly allege this. *See Yanes*, 2015 WL 631962, at *2

Finally, Plaintiff argues that she has adequately alleged damages caused by a breach because "the data DDNY disclosed has economic value and that DDNY did not compensate Plaintiff for taking it." Opp. at 13. But as discussed in the Motion, the SAC does not adequately allege economic injury tied to the value of Plaintiff's data, relying instead on vague and conclusory allegations about economic injury generally, but failing to allege any allegations with regard to Plaintiff's purported economic loss. Motion at 4-7. Accordingly, Plaintiff fails to point to any *actual* damages caused by Defendant's conduct that would be recoverable on a breach of contract claim.

### B. Plaintiff Fails to Plead a Claim for Breach of Fiduciary Duty or Breach of Confidence

Plaintiff argues that Defendant "assumed a duty of confidentiality for the same reason as in *Daly* and *Jones*." Opp. at 14. But this case is dramatically different from *Daly* and *Jones*.

*Daly* involved a consumer providing highly sensitive information (such as full name, date of birth, and social security number) to an insurance company as part of the process of purchasing insurance. *Daly v. Metro. Life Ins. Co.*, 4 Misc. 3d 887, 888-89 (Sup. Ct. 2004). *Jones* involved a consumer providing similar sensitive information as part of a transaction—opening a bank account. *Jones v. Com. Bancorp, Inc.*, No. 06 CIV. 835 (HB), 2006 WL 1409492, at *1 (S.D.N.Y. May 23, 2006). Neither case addresses a fiduciary duty created by simply visiting a website or due to an insurer-insured relationship. Here, Plaintiff simply alleges that she visited Defendant's Website to find dentists in her plan and thereby provided Defendant with personal information. *See* SAC ¶¶ 2-3. Plaintiff's visit to and activity on Defendant's Website, on its own, cannot establish a fiduciary relationship, and Plaintiff provides no legal support to the contrary. *See Gasery v. Kalakuta Sunrise*, LLC, 422 F. Supp. 3d 807, 819 (S.D.N.Y. 2019). *Cf.* Motion at 15-16.

Plaintiff further argues that this case is similar to *Gay* and *Cooper*. Opp. at 15. But these cases are distinguishable. *Gay* involves allegations of a plaintiff being a *patient* of the defendant and transmitting treatment data, including information regarding a particular health condition. *Gay v. Garnet Health*, No. 23-CV-06950 (NSR), 2024 WL 4203263, at *2-4 (S.D.N.Y. Sept. 16, 2024). There is no similar alleged *physician-patient* duty in this case. In *Cooper*, the court considered a breach of fiduciary duty claim against a healthcare provider and for this claim *only* considered the issue of whether a breach of fiduciary duty and other common law claims should be dismissed as duplicative in favor of a claim for breach of physician-patient confidentiality. *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 385 (S.D.N.Y. 2024). This case involves vague and conclusory allegations that "[a] relationship existed […] in which Plaintiff and Class Members put their trust in Defendant to protect the Private Information of Plaintiff and Class Members, and Defendant accepted that trust." SAC ¶ 173. This relationship appears to be based only on Plaintiff being a plan member and that she visited Defendant's website, not the physician-patient confidentiality discussed in *Cooper*. As explained in the Motion, the allegations in the SAC do not show a relationship "of sufficient trust

or confidence" to give rise to such fiduciary obligations. Motion, at 15-17.

Plaintiff also argues *Daly* holds that insurers owe a duty of confidentiality to its insureds and that this is further supported by the Second Circuit's decision in *Young*. Opp. at 15. But *Daly* does not discuss if an insured owes a duty to an insured due to the insurer-insured relationship, and instead involves a discussion of negligence and the duty owed when a consumer provides sensitive information as part of a commercial transaction. *Daly*, 4 Misc. 3d at 891-94. Plaintiff does not allege any such transaction or the exchange of similarly sensitive information (e.g., social security number). And *Young*, a Second Circuit opinion from 1989, provides no discussion of the insurer-insured relationship and any duties that may arise from it. *See generally Young v. U.S. Dep't of Just.*, 882 F.2d 633, 643 (2d Cir. 1989). Plaintiff conveniently ignores Defendant's authority stating that there is no fiduciary duty under New York law extending from insurer to insured outside the context of defending claims against the insured. Motion at 16-17.

Finally, Plaintiff argues that a breach of confidence and breach of fiduciary duty claims are not duplicative because they involve different duties. Opp. at 15. But Plaintiff fails to distinguish the underlying rule from *Kane*, which is that these claims are duplicative when they arise from an identically pled relationship. *See Kane v. Univ. of Rochester,* Case No. 23-CV-6027-FPG, 2024 WL 1178340, at *14 (W.D.N.Y. Mar. 19 2024) (dismissing breach of fiduciary duty claim as duplicative of a breach confidence claim and stating that "whether cast as a 'breach of confidence' or a 'breach of fiduciary duty of confidentiality,' the core of Plaintiffs' claim is the same[.]"). Here, Plaintiff does not point to any allegations in the SAC indicating how her claims involve different duties. In fact, as noted in the Motion, the opposite is true. *See* Motion at 17.

**C. Plaintiff Fails to Plead a Claim for Unjust Enrichment**

Plaintiff argues that her unjust enrichment claim survives because she pleads it in the alternative. Opp. at 16. But nowhere in the SAC does Plaintiff actually plead an alternative theory to her contract or tort claims. Simply stating in her Opposition that her "contract and

other legal claims have different elements than her claim for unjust enrichment" is not sufficient. *Id.* As noted in the Motion, and unaddressed in the Opposition, is recent authority stating that "[e]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs *fail to explain how* their unjust enrichment claim is not merely duplicative of their other causes of action." Motion at 18 (quoting *Addi v. Int'l Bus. Machines, Inc.*, No. 23 CIV. 5203 (NSR), 2024 WL 2802863 at *5 (S.D.N.Y. May 31, 2024) (internal citations omitted) (emphasis added)). Plaintiff provides no such explanation here and tellingly fails to point to any contradictory or alternative allegations in the SAC. Instead, the allegations for her unjust enrichment claim mimic those of her contract claims and tort-based claims for breach of confidence and breach of fiduciary duty, and therefore, must be dismissed. *See* Gay, 2024 WL 4203263, at *6.

**D. Plaintiff Fails to Plead a Claim for Bailment**

Plaintiff asks that the Court *infer* that Defendant received and controlled Plaintiff's communications and that this created a bailment relationship. She states that a "natural inference […] must be drawn in Plaintiff's favor, that [Defendant] received the communications sent to it by plan members through the plan-member portal" Opp. at 16-17. But Plaintiff fails to point to any allegations in *the SAC* showing that Defendant *received* and *controlled* her information in such a manner to constitute a bailment relationship, *i.e.*, that plaintiff *delivered* her property to a defendant for safekeeping and reasonable care. The SAC indicates the opposite—that Defendant allegedly *intercepted* and *surreptitiously* collected and transmitted Plaintiff's personal information via undisclosed third-party web technologies. *See* Motion at 19-20.

**E. Plaintiff Fails to Plead a Claim Under New York GBL § 349**

Plaintiff argues that reliance is not an element of a section 349 claim but seemingly ignores Defendant's argument that Plaintiff fails to allege the required *misrepresentation* that forms the basis for her claim. Opp. at 18. Critically, Plaintiff claims to have relied upon the HIPAA Notice and Privacy Notice but ignores in her Opposition that the Privacy Notice expressly informs consumers about tracking for targeted advertising. *See* SAC ¶ 219; *see also* Dkt. 30-1. Plaintiff

cannot allege Defendant engaged in an unfair or deceptive act or practice that was clearly disclosed. *See Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 348 (S.D.N.Y. 2023) (dismissing section 349 claim in part because "Plaintiff does not allege any material information in Defendant's possession that it failed to disclose to its consumers.").

Plaintiff also argues that she may satisfy the GBL injury requirement based on allegations of being deprived of the right to maintain the privacy of PHI and not receiving the benefit of the bargain for valuable data. Opp. at 19-20. As discussed in the above section on standing above and in the Motion, Plaintiff fails to allege any specific facts to support such injuries. Motion at 3-10. The SAC relies on conclusory allegations and is entirely devoid of any supporting facts showing how *Plaintiff* was deprived of the benefit of a bargain or how being deprived of the right to maintain the privacy of certain data creates an *actual harm* to *her* that can be compensated. It is especially telling that the Opposition section on GBL injury lacks *any* citations to the SAC.

**F. Plaintiff Fails to Plead a Claim for Violation of the Federal Wiretap Act**

Plaintiff argues that using a website and acquiescing to its online terms are insufficient to demonstrate consent for purposes of the Wiretap Act. Opp. at 20. This is unavailing. The Second Circuit has made clear that consent under the Wiretap Act is to be construed broadly and may be either express or implied. *See Kwok Sze v. Pui-Ling Pang*, No. 15-CV-447 CS, 2015 WL 6867134 at *3 (S.D.N.Y. Nov. 9, 2015) (citation omitted). Recent decisions in other jurisdictions have affirmed this principle in the context of online policies. *See e.g., Lakes v. Ubisoft*, No. 24-CV-06943-TLT, 2025 WL 1036639 at *5 (N.D. Cal. Apr. 2, 2025) (finding that acceptance of online policies satisfied the consent standard, rejecting the need for "granular disclosures."). Here, Plaintiff admits she relied on Defendant's online terms, including its HIPAA Notice and Privacy Notice. SAC ¶ 219; Opp. at 20. Accordingly, two-party consent has been satisfied and no inquiry into the crime-tort exception to the one-party consent rule is required.

But even if the Court disagrees and invites analysis of the crime-tort exception, Plaintiff has not properly pleaded this exception. In the SAC, Plaintiff alleges that a violation of NY

GBL § 349 and the tort of invasion of privacy are the bases for the crime-tort exception, leaving out any discussion of HIPAA. *See* SAC ¶¶ 243-48. But Plaintiff mentions neither of these bases in her Opposition and instead, focuses entirely on whether Defendant's actions violated HIPAA and suggests that this forms the basis of the crime-tort exception.[2] Opp. at 21-22. Regardless, the SAC still falls short of alleging this exception applies. Plaintiff's Opposition tellingly fails to point to any allegations that violating HIPAA was Defendant's *intent* at the time of interception. Opp. at 21-22. Intent to commit a crime or tort from the outset is the relevant inquiry, not the existence of criminal or tortious conduct. *See Cooper*, 742 F.Supp.3d at 378.

Although Plaintiff never expressly alleges that Defendant intended to violate HIPAA, Plaintiff asks the Court to *infer* that the existence of a HIPAA violation supports the exception. Opp. at 21. But "[i]ntent may not be inferred simply by demonstrating that the intentional act of recording itself constituted a tort. […] [and] [t]o survive a motion to dismiss, a plaintiff must plead *sufficient facts* to support an inference that the offender intercepted the communication *for the purpose* of a tortious or criminal act that *is* ***independent*** *of the intentional act of recording*." *See Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010) (emphasis added). Also, "[a]t the time of the recording the offender must intend to use the recording to commit a criminal or tortious act." *Id.* at 97. Here, Plaintiff fails to provide any facts showing (1) Defendant's intent to violate HIPAA that is independent of the interception itself and (2) Defendant had criminal/tortious intent at the time of interception. Accordingly, there are no facts for the Court to draw an inference of intent from. *See Cooper*, 742 F. Supp. 3d at 378 (reading *Caro* to hold that the mere fact that a defendant engaged in "criminal or tortious conduct [alone] does not suffice" for the exception and that "the defendant must have a criminal or tortious purpose at the time of the interception that is 'independent of the act of recording itself.'"); *see also Caro*, 618 F.3d at 99-

---

[2] As Defendant argued in the Motion, Plaintiff's allegation of invasion of privacy is not actionable in New York, and courts have found NY GBL § 349 insufficient for crime-tort purposes. Opp. at 21-23; Motion at 23. As a result, neither can form the basis for the crime-tort exception. *Id.*

100 ("If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation.")

## IV. CONCLUSION

For the foregoing reasons and for the reasons stated in the Motion, Defendant respectfully requests the Court grant the Motion and dismiss Plaintiff's Second Amended Complaint.

Dated: May 21, 2025 Respectfully submitted,

*/s/ Kari M. Rollins*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Kari M. Rollins, NY State Bar No. 5552468
Charles Glover, NY State Bar No. 5329909
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
Facsimile: 212.653.8701
E-mail: krollins@sheppardmullin.com
E-mail: cglover@sheppardmullin.com

Wynter L. Deagle (*Pro Hac Vice*)
12275 El Camino Real, Ste 100
San Diego, CA 92130
Telephone: 858.720.8947
Facsimile: 858.509.3691
E-mail: wdeagle@sheppardmullin.com

Samuel Hyams-Millard (*Pro Hac Vice* Forthcoming)
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
E-mail: shyams-millard@sheppardmullin.com

*Attorneys for Defendant Delta Dental of New York, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1, the undersigned, Kari M. Rollins, counsel of record for Defendant Delta Dental of New York, certifies that this brief contains 3,486 words, which complies with the word limit.

Dated: May 21, 2025 Respectfully submitted,

*/s/ Kari M. Rollins*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Kari M. Rollins, NY State Bar No. 5552468
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: 212.653.8700
Facsimile: 212.653.8701
E-mail: krollins@sheppardmullin.com

*Attorneys for Defendant Delta Dental of New York, Inc.*